THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM BAUGH, Defendant-Appellant.

Fourth District   No. 4—89—0235

Opinion filed September 28, 1989.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Nancy Owen, State's Attorney, of Charleston (Kenneth R. Boyle, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

This is a consolidated appeal by defendant William Baugh from an order of the circuit court of Coles County entered upon defendant's convictions for violating his bail bond (No. 88—CF—86) (Ill. Rev. Stat. 1987, ch. 38, par. 32—10) and theft by deception of property exceeding $300 in value (No. 87—CF—185) (Ill. Rev. Stat. 1987, ch. 38, pars. 16—1(b), (e)(3)). Defendant was found guilty of the bail bond violation following a jury trial. Thereafter, defendant pleaded guilty to the theft charge, the charge pending at the time of the bail bond violation.

A combined sentencing hearing was conducted on January 3, 1989, after which defendant was sentenced to a term of imprisonment of five years for the theft conviction, to be served concurrently with a three-year term of imprisonment imposed by the circuit court of Sangamon County in an unrelated case, and to a three-year term of imprisonment for the bail bond violation to be served consecutive to the other two sentences. In addition, the trial court ordered defendant to pay from the defendant's bond deposit court costs and a $100 fee for the services of the public defender. In the event there

was any bond deposit remaining after the payment of court costs and the fee for the public defender, the trial court ordered the remainder paid to the victims of the theft by deception, not to exceed $2,200, which was the amount of money paid by the victims, Marion and Thomas McManaway, to defendant as a result of defendant's deception. At that time, defendant had deposited with the circuit clerk's office a total of $2,200 as cash bond in both cases.

After defendant's motion to withdraw the guilty plea and to reconsider the sentence was denied, defendant appealed. On appeal, the only issue raised is whether the trial court improperly ordered restitution in these cases. Defendant's contentions are three: (1) the order of the trial court failed to state an exact amount; (2) the order of restitution failed to offset the value of work performed by defendant for the victims; and (3) the bond money actually belongs to defendant's father. Defendant also suggests the court erred when, in determining whether the deposits should be paid to defendant's father or the victims, the court referred to the "79-year-old victim" since defendant suggests there is no factual basis for this statement in the record.

Under section 5—5—6 of the Unified Code of Corrections (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—5—6), when the victim of a criminal offense is age 65 or older, the court must order restitution. In all other cases, the court must determine if restitution is appropriate, and if restitution is appropriate, the court has the discretion to order restitution. We note that nowhere in the record is the age of the victim established. The sentencing judge referred to the victim's age as 79. This was apparently because the State's Attorney so stated and suggested this was established in the factual basis of the defendant's guilty plea. However, the age of the victim was not included in the factual basis for the guilty plea, nor in the presentence report. However, we do not find this to be determinative since restitution would have been proper here regardless of the victim's age.

■■ The method for determining the amount of restitution is set forth in section 5—5—6. Considering the ability of defendant to pay restitution, the court may order defendant to pay restitution in a single payment or in installments (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—5—6(f)). Although courts have stated no presumption that defendant is able to pay restitution exists merely because defendant has posted bond (*People v. Johnson* (1982), 106 Ill. App. 3d 171, 440 N.E.2d 1257), the statute provides the court may require a defendant to pay as restitution the balance of a cash bond remaining after court costs and any fine are paid out of the bond. (Ill. Rev. Stat.,

1988 Supp., ch. 38, par. 1005—5—6(e).) Here, the court knew defendant was about to serve consecutive terms of imprisonment and that his ability to pay restitution would be diminished thereby. Therefore, the court appropriately ordered the payment of restitution in a single payment, applying only the balance of defendant's $2,200 cash bond, after payment of court costs and $100 for public defender's fees. See *People v. Roby* (1988), 169 Ill. App. 3d 187, 523 N.E.2d 631.

■ Defendant argues that the court's directive putting a cap of $2,200 on the amount of restitution was not sufficiently determinate to properly state an amount of restitution. We disagree. In *People v. White* (1986), 146 Ill. App. 3d 998, 497 N.E.2d 888, the sentencing court ordered restitution in the sum of $12,884.25 and reserved the right to determine additional expenses during defendant's incarceration. This court declared the order invalid since the sentence was not clear and definite. In the case at bar, the restitution order is clear and definite. The only amount defendant will have to pay in restitution is the amount of the cash bond left over after reduction by court costs and the public defender fee. No other payment is required by the order of the trial court.

■ ■ Similarly, defendant's argument that the trial court's order of restitution exceeded the victims' out-of-pocket expenses is without merit. Clearly, the statute requires the victims be reimbursed only for their actual out-of-pocket expenses (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—5—6(b)). The factual basis for the guilty plea establishes that defendant and another individual were driving around Mattoon, Illinois, "looking for work." They approached the victims' home and advised Mrs. McManaway she needed roofing repair work done. She agreed to allow defendant to do the work. She agreed to pay $400 or $500. Defendant went to a local lumber yard, purchased $75 worth of tar and shingles, returned to the victims' home and applied the shingles and tar. After three hours on the job, he demanded and was paid $2,200. Two reputable roofers in the area viewed the work. One estimated the cost of the job to be $143. The other estimated $170.

■ Defendant contends the trial court ignored the value of the repairs to the victims. However, the defendant did not offer evidence in mitigation to establish the repairs were necessary in the first place, and the trial court could conclude that, even though defendant did some work, he was deceiving these people right from the inception. Defendant admitted to police officers he knew the work was not standard work and he had overcharged the victims.

Moreover, assuming for the sake of argument that defendant is

entitled to a setoff for work performed, he received it. The victims in this case will receive a great deal less than the $2,200 they paid defendant. The first 10% of the cash bond is applied as bond costs. (Ill. Rev. Stat. 1987, ch. 38, par. 110—7(f).) Thereafter, court costs and $100 for public defender's fees are deducted. Based on the evidence presented, the trial court could properly determine these costs and fees equalled or exceeded any value received by the victims by reason of defendant's work.

Defendant's final contention is that restitution was not proper in this case because the cash bond was not defendant's money. Defendant posted the $2,200 cash bond on July 18, 1988. On January 3, 1989, an assignment of bond deposit was executed by defendant in favor of his father, William A. Baugh, and filed with the court. No evidence was presented at the sentencing hearing concerning the source of the $2,200 posted as bond. Defendant's attorney merely advised the court that defendant executed the bond assignment "so money advanced him by his father might be returned to his father."

■■ Several decisions have considered the availability of the cash bond to pay fines and court costs where another person loaned the money to defendant or was later assigned defendant's right to the money. In such cases, the courts have held that regardless of who posted bond, section 110—7 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 110—7) requires the cash bond to be applied to satisfy a judgment ordering defendant to pay either court costs or a fine. (*People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194; *People v. Owens* (1988), 174 Ill. App. 3d 156, 528 N.E.2d 446.) The statute relating to restitution, however, does not require the cash bond to be applied to pay the ordered restitution. Instead, the statute leaves to the discretion of the trial court the question of whether the cash bond should be used to pay restitution. (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—5—6(e).) The order of the trial court will not be reversed in the absence of defendant demonstrating an abuse of discretion on the part of the trial court.

In this case, no abuse of the trial court's discretion has been demonstrated. The supplemental presentence investigation report indicates defendant described himself as a self-employed roofer with an income of $100 per week on which he supports himself, his wife, and three children ages seven, four, and two. They pay no rent because defendant's parents own the home. They do not presently get food stamps or public aid. He owes $4,000 to his parents and medical bills of $15,000. Since his initial arrest in this case on November 6, 1987, additional charges have been filed against defendant in several coun-

ties in Indiana and Illinois.

■■ No evidence was presented at the sentencing hearing as to where defendant obtained the funds for his cash bond, and defendant's father did not seek to intervene to protect his interest. (See *People v. Wurster* (1981), 97 Ill. App. 3d 104, 422 N.E.2d 650.) The mere statement of counsel is insufficient to establish that the money was loaned to defendant by defendant's father. The court could reasonably conclude based on the facts of this case that defendant's ongoing illegal activities generated a great deal more income than $100 per week and that it was these illegal activities which were the source of the $2,200 cash bond, not defendant's father. The court could also reasonably conclude that, since the assignment of the bond was executed on the day of the sentencing hearing, the assignment was made for the purpose of frustrating the restitution statute.

■■ ■ In any event, because the assignee acquires only those rights or interests in the property that the assignor possessed (see *Wurster*, 97 Ill. App. 3d 104, 422 N.E.2d 650), an assignment cannot defeat the order of restitution. Defendant had rights in the funds subject to all property deductions as ordered by the court. This mere expectancy that the monies would be returned is all defendant assigned to his father. Defendant's father has no more right to the funds than did defendant. Any assignee of the cash bond takes subject to the power of the court to invade the funds for the purpose of paying restitution to the victims of defendant's criminal activity.

For the foregoing reasons, the order of the circuit court of Coles County is affirmed.

Affirmed.

KNECHT and GREEN, JJ., concur.