THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM COSTELLO, Defendant-Appellant.

First District (3rd Division)   No. 1—88—0505

Opinion filed January 15, 1992.

Randolph N. Stone, Public Defender, of Chicago (Dennis E. Urban, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Noreen M. Daly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendant William Costello was convicted of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14) and sentenced to 15 years' imprisonment. On appeal, defendant argues that (1) inculpatory statements made during questioning and interrogation should have been suppressed because they were given involuntarily; (2) the trial court erred when it denied his motion in arrest of judgment where the information failed to set forth all the statutory elements of aggravated criminal sexual assault; (3) the trial court erred when it prevented defense counsel from impeaching the complaining witness with a prior inconsistent statement; (4) the State failed to prove all the elements of aggravated criminal sexual assault beyond a reasonable doubt; (5) certain improper and prejudicial remarks made by the prosecutor during the rebuttal closing argument entitle him to a new trial; and (6) the sentence of 15 years' imprisonment imposed by the trial court is excessive and should be reduced. We affirm.

In November 1985, defendant randomly dialed telephone numbers from the Chicago telephone book with the prefix 925. Mabel Geiger, a 70-year-old woman whose telephone number begins with the prefix

925, answered her telephone. Defendant identified himself as Dr. Steven Collins, and stated that he had been hired by Medicare to give Geiger a free medical examination. Geiger, believing defendant to be a doctor, scheduled an examination for herself and her mother at an undetermined date in November 1985.

On the scheduled day, defendant arrived at Geiger's apartment and presented a badge to her with the name Dr. Steven Collins on it. Geiger admitted defendant to her home and brought him into the dining room, where her 82-year-old mother, Sarah Cox, was confined to a hospital bed. Defendant listened to Cox's heartbeat with a stethoscope and then examined a bed sore which had developed on her buttocks. Defendant stated that the sore looked alright, took her blood pressure and completed the examination.

Defendant then told Geiger to go into an adjoining bedroom so that he could administer her medical examination. Defendant told Geiger to remove all her clothing and instructed her to lie down on the bed. Geiger complied, and told defendant that she had a growth near the entrance of her vagina that had been diagnosed by her previous doctor. Defendant knelt down at the foot of the bed and put his bare hands in Geiger's vagina. Geiger testified that defendant had all his fingers inside her vagina and that he kept twisting and "working around in there" even after she told defendant that the growth was near the entrance of her vagina.

After completing the vaginal examination, defendant told Geiger that he wanted to examine her breasts. Geiger testified that defendant was getting rough and pinching her nipples, and asked him to stop because he was hurting her. After the breast examination, defendant told Geiger that he wanted to do another vaginal examination, and again placed his fingers inside her vagina. Upon completing the breast and vaginal examination, defendant listened to Geiger's heart with the stethoscope and scheduled another free examination for an undetermined date in December 1985. Defendant cancelled the December 1985 appointment with Geiger, explaining that he had other sick patients to care for, but rescheduled the examination for an undetermined date in January 1986.

On the specified date in January 1986, defendant again came to Geiger's home. At that appointment, Geiger refused to allow defendant to examine her, telling defendant that she did not want him to touch her. When defendant instructed her to get undressed, she refused. Defendant insisted that he examine her and directed her to unbutton her blouse. Geiger unwillingly agreed and removed her blouse. Defendant began to grab at her breasts. Geiger testified that

defendant was breathing heavily, and insisted that defendant stop. Defendant quickly left Geiger's apartment.

In February 1986, defendant was again randomly calling telephone numbers from the Chicago telephone book. He contacted 66-year-old Esther Aisenberg. Defendant again represented himself to be a doctor who was hired by Medicare to give free medical examinations. Defendant scheduled an appointment with Aisenberg for a free medical examination on February 24, 1986. Aisenberg, however, became suspicious and informed the police. Aisenberg agreed to cooperate with the police in their investigation and apprehension of defendant.

On February 24, 1986, defendant arrived at Aisenberg's home to administer the examination. Chicago police officer David Leipert was hiding in the bedroom closet at the time of the attempted examination. He heard defendant identify himself as Dr. Collins, tell Aisenberg that he was there to give her a free medical examination, and instruct her to take off all her clothes. At this point, Officer Leipert emerged from the closet, and defendant responded, "I'm no doctor, I'm not a doctor." Defendant was placed under arrest and was transported to the 24th District police station for processing.

The following day, Assistant Public Defender Woodward Jordan was appointed by the court to represent defendant. Jordan conferred with defendant, advised him of his constitutional rights, and informed him of the difference between a felony and a misdemeanor. Assistant State's Attorney Richard Mottweiler, who worked in the felony review unit of the Cook County State's Attorney's office, was assigned to the case. Mottweiler, after informing defendant of his *Miranda* rights, interviewed defendant in the presence of Jordan and Chicago police detective James Spencer. Defendant stated to Mottweiler that he understood his rights and wished to speak with him. Defendant proceeded to make inculpatory statements to Detective Spencer and Mottweiler. Jordan was present during the entire conversation with defendant.

Defense counsel made a motion to suppress defendant's inculpatory statements given to Detective Spencer and Mottweiler. At the motion to suppress hearing, defendant testified that he was not informed of his *Miranda* rights by Detective Spencer and that he was told by Detective Spencer that if he did not cooperate with him that he would be charged with a Class X felony. While defendant admits that Mottweiler informed him of his *Miranda* rights, he testified that Mottweiler was speaking to him in a very intimidating manner.

Jordan testified that he informed defendant of his *Miranda* rights, and specifically told defendant that he should not say anything to any police officer or State's Attorney. Jordan also testified that Mottweiler told defendant at least twice that he had the right to remain silent. Jordan stated that Mottweiler spoke to defendant in a serious but lawyerly tone and that Mottweiler did not say anything to defendant in a threatening manner. Finally, Jordan testified that Mottweiler told defendant that if he did not talk or cooperate with him the State was going to increase the charge to a felony.

The trial court ruled that after evaluating the totality of the circumstances, in view of the fact that defendant was represented by counsel and that counsel was present during all questioning and interrogation, defendant made the inculpatory statements to Detective Spencer and Mottweiler voluntarily and denied the motion. Defense counsel's motion to suppress defendant's lineup was also denied.

Following a two-day trial, the jury found defendant guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14), a Class X felony. The trial court denied defendant's post-trial motions for an acquittal notwithstanding the verdict, for a new trial and for an arrest of judgment. The trial court sentenced defendant to 15 years' imprisonment in the Illinois Department of Corrections, to be followed by three years of mandatory supervised release. This appeal followed.

Defendant contends that his inculpatory statements made during questioning and interrogation to Detective Spencer and Assistant State's Attorney Mottweiler should have been suppressed because they were given involuntarily. We disagree.

Prior to trial, a defendant in a criminal case may move to suppress evidence of a confession on the ground that it was not given voluntarily. (Ill. Rev. Stat. 1985, ch. 38, par. 114—11.) In deciding whether inculpatory statements were given voluntarily, a court will look at the totality of the circumstances in order to determine whether the statement was made freely, voluntarily, and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed. (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, 606; *People v. Langlo* (1987), 153 Ill. App. 3d 636, 641, 505 N.E.2d 1338, 1341.) Consideration must be given to both the characteristics of the accused and the details of the interrogation. (*People v. Reid* (1990), 136 Ill. 2d 27, 54-55, 554 N.E.2d 174, 187.) This determination should include an evaluation of the defendant's age, experience, education, background, and intelligence, as well as the conditions and circumstances surrounding the interrogation

when the waiver took place. *People v. Smith* (1990), 199 Ill. App. 3d 839, 846-47, 557 N.E.2d 596, 602-03.

■ In this case, the testimony at the suppression hearing supports the trial court's ruling that defendant's inculpatory statements to Detective Spencer and Mottweiler were given voluntarily. First, Jordan, defendant's court-appointed attorney, was present during all questioning of defendant. Jordan testified that Mottweiler informed defendant at least twice of his right to remain silent. Jordan also testified that he warned defendant on several occasions not to say anything to either Detective Spencer or Mottweiler, and at one point told defendant to "shut up." Second, there is no evidence of the threat or use of physical force by either Detective Spencer or Mottweiler in order to obtain the inculpatory statements. Third, evaluation of the characteristics of this particular defendant and the details of the interrogation do not support a finding that defendant's inculpatory statements were given involuntarily. Defendant was 50 years old at the time of his arrest. He had graduated from high school, had some technical school experience, and had completed the equivalent of two years of college. While it is true that defendant had never been arrested before, there is nothing to suggest based on defendant's intelligence, background, or the circumstances of the questioning that defendant was unaware that he was making inculpatory statements that could be used against him in a criminal trial. We, therefore, conclude that the trial court's ruling that defendant's inculpatory statements to Detective Spencer and Mottweiler were given voluntarily is not contrary to the manifest weight of the evidence.

Defendant contends that the trial court erred when it denied his motion in arrest of judgment where the information failed to set forth all the statutory elements of aggravated criminal sexual assault. We disagree.

Section 111—3(a) of the Code of Criminal Procedure of 1963 sets forth the requirements for the form of the charge against a defendant. (Ill. Rev. Stat. 1985, ch. 38, par. 111—3.) The statute requires the charge against a defendant to specifically include the name of the offense, the statutory provision alleged to have been violated, the nature and elements of the offense, the date and county where the offense took place, and the name of the accused. (Ill. Rev. Stat. 1985, ch. 38, par. 111—3(a).) The purpose of this requirement is to ensure that a defendant will be informed with reasonable certainty of the offense with which he is charged so that he can prepare his defense. *People v. Hall* (1982), 96 Ill. 2d 315, 319-20, 450 N.E.2d 309, 311.

Defendant argues that count I of the information fails to allege the essential statutory element of knowledge as set forth in section 12—13 of the Criminal Code. (Ill. Rev. Stat. 1985, ch. 38, par. 12—13.) This contention is without merit. It is a well-established rule in Illinois that all counts of a multicount indictment or information should be read as a whole and that elements missing from one count of an indictment or information may be supplied by another count. *People v. Morris* (1990), 135 Ill. 2d 540, 544, 554 N.E.2d 150, 152; *People v. Hall*, 96 Ill. 2d at 320, 450 N.E.2d at 311.

■ An accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault as defined in section 12—13 of the Criminal Code and any one of the aggravating circumstances enumerated in section 12—14 of the Criminal Code existed during the commission of the offense. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—13, 12—14.) In this case, count I of the information set forth the aggravated criminal sexual assault charge and counts II and III set forth the criminal sexual assault charges. Knowledge, an essential element of aggravated criminal sexual assault, is clearly set forth in counts II and III of the information. Count II charges defendant knew Geiger was unable to understand the nature of the act, and count III charges defendant knew Geiger was unable to give her knowing consent. While the element of knowledge should have been set forth within count I of the information, we conclude that all the essential elements of aggravated criminal sexual assault were sufficiently set forth in the multicount information to inform defendant with reasonable certainty of the offense with which he was charged. We, therefore, conclude that the trial court did not err when it denied defendant's motion in arrest of judgment.

Defendant contends that the trial court erred when it prevented defense counsel from impeaching the complaining witness with a prior inconsistent statement. We disagree.

Section 115—10.1 of the Code of Criminal Procedure permits the introduction of otherwise inadmissible hearsay testimony if a witness' statement is inconsistent with an earlier statement given at a prior hearing or trial. (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1.) The determination of whether a witness' prior testimony is inconsistent with present testimony is left to the sound discretion of the trial court. *People v. Flores* (1989), 128 Ill. 2d 66, 87-88, 538 N.E.2d 481, 489.

On direct examination, Geiger testified that defendant placed his hand in her vagina. On cross-examination, defense counsel attempted to impeach Geiger with prior testimony which she gave at a preliminary hearing in April 1986. At trial, defense counsel attempted to ask

Geiger whether she gave this response to the following question at the preliminary hearing:

"Q. And [defendant] did not attempt at anytime to sexually assault you?

A. No."

The prosecutor objected to the attempted introduction of this prior testimony. The trial court sustained the objection, stating that the question requires an answer that only the jury could decide after hearing all the evidence of the case. We agree.

■ First, the trial court's refusal to admit Geiger's prior statement made at the preliminary hearing was proper because the answer itself called for a legal conclusion which would have invaded the province of the jury. See *Ferry v. Checker Taxi Co.* (1987), 165 Ill. App. 3d 744, 748-49, 520 N.E.2d 733, 736; *People v. Panczko* (1980), 86 Ill. App. 3d 409, 412, 407 N.E.2d 988, 991; *People v. Millet* (1965), 60 Ill. App. 2d 22, 34, 208 N.E.2d 670, 677.

Second, Geiger's prior testimony was not inconsistent for the purposes of section 115—10.1 of the Code of Criminal Procedure. (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1.) The question asked to Geiger at the preliminary hearing was attempting to determine whether Geiger had been sexually assaulted by defendant with his penis, and it is clear that Geiger answered the question in that context. Defense counsel's attempt to introduce Geiger's prior testimony out of context does not render that statement inconsistent for the purposes of section 115—10.1 of the Code of Criminal Procedure. (See *People v. Davis* (1982), 106 Ill. App. 3d 260, 263-64, 435 N.E.2d 838, 842; *People v. Brown* (1980), 91 Ill. App. 3d 582, 584-86, 414 N.E.2d 1165, 1167-68.) We, therefore, conclude that the trial court's exclusion of defense counsel's attempted impeachment of the complaining witness with the alleged prior inconsistent statement was proper and not an abuse of discretion.

Defendant contends that the State failed to prove all the elements of aggravated criminal sexual assault beyond a reasonable doubt. We disagree.

The reviewing court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Schott* (1991), 145 Ill. 2d 188, 206 (applying the same standard for reviewing the sufficiency of the evidence on appeal in sex-offense cases as in all other criminal cases).) On review, the trial court's judgment will not be set aside unless the proof is so unsatisfactory, improbable or implausible as to justify a

reasonable doubt as to the defendant's guilt. *People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319.

Defendant argues that the State failed to prove beyond a reasonable doubt that he knew that Geiger did not give knowing consent to the act of sexual penetration. Our review of the record reveals that there is nothing unsatisfactory, improbable or implausible about the jury's finding of defendant's guilt.

■ At trial, Geiger set forth in explicit detail the circumstances of her initial and follow-up telephone conversations with defendant, her medical examinations, and her reaction to learning that defendant was not a doctor. Her testimony was corroborated by the testimony of Officer Leipert, who heard defendant exclaim "I'm no doctor, I'm not a doctor," after telling Esther Aisenberg that he was a doctor hired by Medicare and directing her to take off her clothes. Additionally, Geiger's testimony was further corroborated by Detective Spencer and Mottweiler, who testified about inculpatory statements made by defendant of his actions during questioning and interrogation. There is no evidence to suggest that Geiger would have consented to defendant's acts of sexual penetration if she had been aware that defendant was not the doctor he represented himself to be. Geiger's age and financial position made her susceptible to predators like defendant. Defendant used deception to gain the confidence of his victim in order to get her to submit to his acts of sexual penetration, and undoubtedly this deception took away Geiger's ability to give knowing consent to these acts. We, therefore, conclude that after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the State proved all the elements of aggravated criminal sexual assault beyond a reasonable doubt.

Defendant contends that certain improper and prejudicial remarks made by the prosecutor during the rebuttal closing argument entitle him to a new trial. We disagree.

The State is permitted wide latitude during closing arguments and may argue to the jury facts and legitimate inferences drawn from the evidence. (*People v. Thompkins* (1988), 121 Ill. 2d 401, 445, 521 N.E.2d 38, 57.) In reviewing allegations of prosecutorial misconduct, the closing arguments of both the State and the defendant must be examined in their entirety and the complained-of comments must be placed in their proper context. *People v. Cisewski* (1987), 118 Ill. 2d 163, 175-76, 514 N.E.2d 970, 976.

■ In this case, defense counsel failed to make a contemporaneous objection to the prosecutor's rebuttal closing argument at trial. A defendant's failure to make a contemporaneous objection to any alleg-

edly improper statement by the prosecutor operates as a waiver of any error in relation to the statements unless the comments were so improper that they constituted plain error. (*People v. Gonzalez* (1991), 142 Ill. 2d 481, 491, 568 N.E.2d 864, 868; 134 Ill. 2d R. 615(a).) A prosecutor's comments will be deemed plain error when the evidence is closely balanced, or if the error is of such a magnitude that the accused is denied a fair and impartial trial. (*People v. Turner* (1989), 128 Ill. 2d 540, 555, 539 N.E.2d 1196, 1202.) We conclude that these statements, examined in their proper context and reviewed with the remainder of the closing statement in its entirety, were not so improper as to constitute plain error. Accordingly, any objections to the prosecutor's comments are waived on appeal.

Defendant contends that his sentence of 15 years' imprisonment is excessive and should be reduced. We disagree.

Aggravated criminal sexual assault is a Class X felony, carrying a sentence of not less than six years and not more than 30 years' imprisonment. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(3).) The sentencing judge is in the best position to consider matters relating to sentencing determinations and is vested with wide discretion in making a reasoned judgment as to the penalty appropriate to the particular circumstances of each case. (*People v. O'Neal* (1988), 125 Ill. 2d 291, 297, 531 N.E.2d 366, 368.) A sentence within the statutory guidelines that is alleged to be excessive will not be disturbed on review unless it is manifestly disproportionate to the nature of the offense. *People v. Cabrera* (1987), 116 Ill. 2d 474, 493-94, 508 N.E.2d 708, 716.

Defendant argues that the trial court erred by not giving greater weight to defendant's absence of a prior adult criminal record or to the lack of physical violence surrounding the facts and circumstances of the crime. This contention is without merit. The fact that defendant was a first-time offender is merely another mitigating factor which is to be considered by the trial court along with all the other mitigating and aggravating factors. (*People v. Tatum* (1989), 181 Ill. App. 3d 821, 826, 537 N.E.2d 875, 878.) A defendant's lack of a prior record is not necessarily the most persuasive consideration at sentencing, and the seriousness of the crime has been called the most important factor to be considered in imposing the sentence. *People v. Hernandez* (1990), 204 Ill. App. 3d 732, 740, 562 N.E.2d 219, 225.

We conclude that the 15-year term of imprisonment imposed by the trial court was not excessive. This sentence is well below the 30-year maximum set by the legislature for a Class X felony. Although no violence was employed in this sexual assault, the fact that defend-

ant was preying on those most vulnerable in our society and his use of trickery and deceit illustrates the heinous nature of this crime. The record reflects that the trial court took into consideration defendant's age, background, employment status, family status, support for his children after his separation from his wife and lack of any prior criminal record when determining defendant's sentence. We find no basis to conclude that the trial court abused its discretion in sentencing defendant to a term of 15 years' imprisonment.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

TULLY* and CERDA, JJ., concur.

---

*Justice White heard oral arguments in this appeal prior to his retirement. Justice Tully was designated the third member of the panel and has read the briefs and listened to the tapes.