THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FONZIE D. RAYBURN, Defendant-Appellant.

Third District    No. 3—92—0900

Opinion filed March 14, 1994.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

James D. Owens, State's Attorney, of Toulon (John X. Breslin and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

The defendant, Fonzie Rayburn, was convicted of aggravated criminal sexual abuse (Ill. Rev. Stat. 1991, ch. 38, par. 12—16(d)). He was subsequently sentenced to seven years' imprisonment. He appeals, and we affirm in part, reverse in part, and remand with directions.

The record shows that following the defendant's arrest, the defendant posted $10 towards his $5,000 bond, and his employer posted the balance. At trial, the complainant, 15-year-old J.B., testified that her mother was Lisa Rayburn and her stepfather was the defendant. She lived with them from the time she was in the fifth grade until the seventh grade. After that, she moved in with her father and stepmother in Eureka, Illinois. When J.B. moved to Eureka, she had visitation with her mother and the defendant every other weekend. She testified that the defendant would touch her breasts and genital area during some of her visits. On certain weekends, the touching was frequent. The last incident occurred on Thanksgiving of 1991, when the defendant approached her as she slept on the couch and touched her breasts and genitals. The victim reported the incidents to her mother and her Aunt Tina as they happened and to her stepmother after Thanksgiving of 1991.

Lonnie Dennison, the sheriff of Stark County, recalled meeting with the defendant at the sheriff's office on January 7, 1992, along with Jim Davis, an investigator for the Department of Children and Family Services (DCFS). When questioned about the allegations, the defendant first denied any such contact. He later claimed an accidental touching, and later still blamed his drug use for any touching. He ultimately acknowledged touching J.B. on the breasts

and genital area twice, the last time being in November of 1990. The sheriff then prepared a written statement which the defendant signed.

Three defense witnesses, Lisa Rayburn, J.B.'s brother M.B., and the defendant himself, all testified that J.B. and her brothers were with their father in Eureka on Thanksgiving of 1991 and were at the Rayburns' house only on the Saturday following Thanksgiving. M.B. further testified that he lived with his mother and the defendant. He said that J.B. never slept on the downstairs couch alone and that she never complained about the defendant. Rayburn added that J.B. had never mentioned the defendant's abuse. The defendant testified that he never touched J.B. inappropriately and insisted that he had been forced to confess because of angry threats made against him.

On rebuttal, Davis testified that the defendant had denied the allegations before ultimately admitting them. He also stated that the defendant had claimed excessive drug use before admitting that he had fondled J.B. twice.

The presentence report revealed that the 35-year-old defendant was steadily employed, as he had been for some time. This employment income, along with disability payments, public aid, and food stamps, supported the defendant, his wife, and two stepsons. According to the report, the defendant had received his GED certificate and had served in the military for three years. The report showed that the defendant's only prior convictions were for traffic offenses; it also contained letters of support for the defendant.

At the sentencing hearing, J.B. testified in aggravation that she had had nightmares and sleeping problems because of the abuse and that she was undergoing counseling. She also said that the abuse had damaged her relationship with her mother. Dr. Margaret Wolf testified that she counseled J.B. for an adjustment disorder related to sexual abuse. She found J.B. to be extremely quiet and depressed. Although J.B. had responded well to counseling, she needed to continue the visits. J.B.'s father also believed that counseling had helped J.B., though the $50 per session was difficult for the family to handle financially. K.M., a 17-year-old cousin of J.B., recalled visiting the defendant's house approximately six years earlier and saw the defendant open his robe and expose himself on two occasions.

The defendant's two stepsons testified in mitigation that they got along well with him. The defendant's wife testified to the defendant's medical problems: a heart condition and spots on his lungs. The defendant testified about his work history and stated that his employer had paid for his bond when he was charged with this offense. He had served in the military for three years but was discharged after

developing a heart condition. He had recently been hospitalized for pneumonia and had tests done on his lungs.

The court noted in aggravation that children were involved in the offense. It then imposed a sentence of seven years of imprisonment and ordered that the posted bond money be used for court costs of $618, a mandatory fine to the Family Abuse Fund, and repayment of the victim's father for any past and future counseling for J.B.

On appeal, the defendant first argues that this court should reduce his seven-year term of imprisonment because the court overemphasized the offense and did not adequately consider the significant mitigation factors presented in the case.

We begin by noting that a trial judge is in a better position than a reviewing court to consider the defendant's credibility, demeanor, and moral character in arriving at a sentence. (*People v. Thompson* (1990), 200 Ill. App. 3d 23, 557 N.E.2d 1008.) Thus, a sentencing determination is entitled to great deference, and a sentence will not be reversed unless it is an abuse of discretion. (*People v. Illgen* (1991), 145 Ill. 2d 353, 583 N.E.2d 515.) A sentence is an abuse of discretion if it is manifestly unjust or palpably wrong. (*People v. Anderson* (1986), 112 Ill. 2d 39, 490 N.E.2d 1263.) A reviewing court will not substitute its judgment for that of the sentencing judge simply because it might have balanced the sentencing factors differently. (*People v. Pittman* (1982), 93 Ill. 2d 169, 442 N.E.2d 836.) Additionally, the seriousness of the crime has been called the most important factor to consider when imposing a sentence. *People v. Costello* (1992), 224 Ill. App. 3d 500, 586 N.E.2d 742.

■ In the instant case, the defendant sexually abused his wife's daughter when she was present in the home pursuant to a visitation provision in a divorce proceeding. According to the victim's testimony, the defendant not only hurt her, but he also damaged her relationship with her mother. The record also shows that the defendant caused great psychological harm to the victim. In addition, the abuse occurred over a long period of time, and the defendant had also exposed himself to the victim's cousin. Viewing the record as a whole, we find that that trial court did not abuse its discretion if it relied more heavily on these and other factors in aggravation rather than the defendant's lack of a criminal record and other mitigating factors in determining the defendant's sentence.

We now turn to the defendant's contention that the trial court's order requiring restitution for J.B.'s counseling expenses should be vacated. Before we discuss the merits of this issue, however, we note that the State argues that the defense has waived this issue on appeal by failing to raise it in the trial court.

Plain error may be considered an exception to the waiver rule where the record shows that an alleged error affecting substantial rights was committed. Reviewing courts have considered questions regarding restitution orders as a matter of plain error. See generally *People v. Jones* (1990), 206 Ill. App. 3d 477, 564 N.E.2d 944.

▉ In the instant case, this restitution order creates significant questions concerning Illinois law which should be addressed to clarify any misinterpretation of the statute involved and how it is applied. Therefore, we invoke the plain error exception to the waiver rule and will hear this issue on appeal.

The defendant first argues that the restitution order should be vacated because there is no indication in the record that he has the ability to pay such restitution.

▉ Section 5—5—6(g) of the Unified Code of Corrections states that for certain offenses the court shall, after determining the defendant's ability to pay, require the defendant to pay for the victim's counseling services. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(g).) Although there is no presumption that the defendant is able to pay restitution merely because he has posted bond (*People v. Johnson* (1982), 106 Ill. App. 3d 171, 440 N.E.2d 1257), the statute states that the court may require a defendant to pay restitution from the balance of a cash bond remaining after court costs and any fine are paid out of the bond. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(e).) Additionally, although another individual may provide the defendant's bond money, it is within the discretion of the trial judge to determine whether that money should be used for restitution. The order of the trial court will not be reversed in the absence of the defendant demonstrating an abuse of discretion on the part of the trial court. *People v. Baugh* (1989), 188 Ill. App. 3d 902, 544 N.E.2d 1165.

In the instant case, no abuse of the trial court's discretion has been shown. The presentence investigation report indicated that the defendant has worked at the same job since approximately 1985. He receives disability payments from his Veterans Administration pension. His wife and her two sons receive public aid and food stamps each month. The report also indicated the defendant pays a number of debts that the average citizen incurs: rent, electricity, telephone, gas, and a car payment. In summarizing the report, the probation officer recommended that the defendant pay for the counseling expenses for the victim.

The court knew the defendant was about to serve a seven-year term of imprisonment, which would greatly reduce his ability to pay restitution. Therefore, it acted appropriately when it ordered the payment of restitution from the defendant's bond money. As noted

above, the bond may be used for restitution purposes regardless of who posted the money. Furthermore, we note that the defendant's employer did not intervene in this case and protect any interest he might have had in such bond. Accordingly, we find that the trial court acted within its discretion in ordering the defendant's bond money to be used for the payment of restitution.

Next, the defendant argues that the statute authorizing the courts to order restitution does not encompass the unlimited "pooling" of money for past and future expenses that occurred in this case.

Section 5—5—6(g) of the Unified Code of Corrections allows the trial court to order restitution for prospective counseling expenses in sexual abuse cases. (*People v. Auler* (1993), 250 Ill. App. 3d 1095, 621 N.E.2d 288.) The court may require the payments for a period not to exceed five years after the sentencing. Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6(g).

Additionally, when considering the ability of the defendant to pay restitution, the court may order the defendant to pay in a single payment or in installments. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(f).) When a court knows that a defendant is about to serve a term of imprisonment and that his ability to pay restitution will be diminished thereby, it may order the payment of restitution in a single payment, applying the balance of his bond after payment of court costs and other fees. *People v. Baugh* (1989), 188 Ill. App. 3d 902, 544 N.E.2d 1165.

In order to provide for the finality of a sentence, the restitution order should include the following:

"(1) a maximum dollar limit; (2) a time frame for counseling and proof of expenses incurred ***; (3) that the court services department or probation office monitor and administer the payment of restitution; (4) in the event that a dispute develops, that either party may petition the court for resolution thereof; and (5) when bond money is being withheld for use for restitution, a date when any bond monies not so used will be remitted to defendant." *People v. Auler* (1993), 250 Ill. App. 3d 1095, 1101, 621 N.E.2d 288, 292.

■ We find that the trial court acted properly in designating that the remainder of the bond be held for payment of past and future counseling expenses. However, other than setting forth a maximum dollar limit, the trial court's restitution order does not comport with the requirements illustrated in *People v. Auler* (1993), 250 Ill. App. 3d 1095, 621 N.E.2d 288. Thus, the restitution order in the instant case does not fix a sufficiently exact sentence that could be enforced

without judicial action. Therefore, this cause is remanded for the trial court to comply with the *Auler* requirements that have not been met.

■ Finally, the defendant contends that the $100 fine for the Family Abuse Fund which was included in his sentence must be vacated. He argues that the statute authorizing the fine (Ill. Rev. Stat. 1991, ch. 38, par. 1005—9—1.5) became effective after he was charged. We find that the statute authorizing this fine did in fact become effective after the defendant was charged, and therefore the fine must be vacated pursuant to the constitutional prohibition against *ex post facto* laws. U.S. Const., art. I, § 10; Ill. Const. 1970, art. I, § 16; see *Weaver v. Graham* (1981), 450 U.S. 24, 67 L. Ed. 2d 17, 101 S. Ct. 960.

The defendant's sentence of seven years' imprisonment is affirmed. The order of restitution is remanded to the trial court with directions. The $100 fine payable to the Family Abuse Fund is reversed.

Affirmed in part; reversed in part and remanded with directions.

SLATER, P.J., and STOUDER, J., concur.