[No. A027892. First Dist., Div. One. Jan. 25, 1985.]

DANIEL KAYTON BORO, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Vincent J. O'Malley and Allen & O'Malley for Petitioner.

James P. Fox, District Attorney, for Respondent.

John K. Van de Kamp, Attorney General, Eugene W. Kaster, Herbert F. Wilkinson and Blair W. Hoffman, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

NEWSOM, J.—By timely petition filed with this court, petitioner Daniel Boro seeks a writ of prohibition to restrain further prosecution of count II of the information on file against him in San Mateo County Superior Court No. C-13489 charging him with a violation of Penal Code section 261,

subdivision (4),[1] rape: "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: . . . (4) Where a person is at the time unconscious of the nature of the act, and this is known to the accused."[2]

██ Petitioner contends that his motion to dismiss should have been granted with regard to count II because the evidence at the preliminary hearing proved that the prosecutrix, Ms. R., was aware of the "nature of the act" within the meaning of section 261, subdivision (4). The Attorney General contends the opposite, arguing that the victim's agreement to intercourse was predicated on a belief—fraudulently induced by petitioner—that the sex act was necessary to save her life, and that she was hence unconscious of the *nature* of the act within the meaning of the statute.

In relevant part the factual background may be summarized as follows. Ms. R., the rape victim, was employed as a clerk at the Holiday Inn in South San Francisco when, on March 30, 1984, at about 8:45 a.m., she received a telephone call from a person who identified himself as "Dr. Stevens" and said that he worked at Peninsula Hospital.

"Dr. Stevens" told Ms. R. that he had the results of her blood test and that she had contracted a dangerous, highly infectious and perhaps fatal disease; that she could be sued as a result; that the disease came from using public toilets; and that she would have to tell him the identity of all her friends who would then have to be contacted in the interest of controlling the spread of the disease.

"Dr. Stevens" further explained that there were only two ways to treat the disease. The first was a painful surgical procedure—graphically described—costing $9,000, and requiring her uninsured hospitalization for six weeks. A second alternative, "Dr. Stevens" explained, was to have sexual intercourse with an anonymous donor who had been injected with a serum which would cure the disease. The latter, nonsurgical procedure would only cost $4,500. When the victim replied that she lacked sufficient funds the "doctor" suggested that $1,000 would suffice as a down payment. The victim thereupon agreed to the nonsurgical alternative and consented to intercourse with the mysterious donor, believing "it was the only choice I had."

After discussing her intentions with her work supervisor, the victim proceeded to the Hyatt Hotel in Burlingame as instructed, and contacted "Dr.

---

[1]Unless otherwise noted, all further statutory references are to the California Penal Code.

[2]Petitioner makes no challenge to count IV, attempted grand theft (§§ 664/487) and count V, burglary (§ 459) of the information. Count I and count III (§§ 261, subd. (2) and 266) were dismissed below.

Stevens" by telephone. The latter became furious when he learned Ms. R. had informed her employer of the plan, and threatened to terminate his treatment, finally instructing her to inform her employer she had decided not to go through with the treatment. Ms. R. did so, then went to her bank, withdrew $1,000 and, as instructed, checked into another hotel and called "Dr. Stevens" to give him her room number.

About a half hour later the defendant "donor" arrived at her room. When Ms. R. had undressed, the "donor," petitioner, after urging her to relax, had sexual intercourse with her.

At the time of penetration, it was Ms. R.'s belief that she would die unless she consented to sexual intercourse with the defendant: as she testified, "My life felt threatened, and for that reason and that reason alone did I do it."

Petitioner was apprehended when the police arrived at the hotel room, having been called by Ms. R.'s supervisor. Petitioner was identified as "Dr. Stevens" at a police voice lineup by another potential victim of the same scheme.

Upon the basis of the evidence just recounted, petitioner was charged with five crimes, as follows: Count I: section 261, subdivision (2)—rape: accomplished against a person's will by means of force or fear of immediate and unlawful bodily injury on the person or another. Count II: section 261, subdivision (4)—rape "[w]here a person is at the time unconscious of the nature of the act, and this is known to the accused." Count III: section 266—procuring a female to have illicit carnal connection with a man "by any false pretenses, false representation, or other fraudulent means, . . ." Count IV: section 664/487—attempted grand theft. Count V: section 459—burglary (entry into the hotel room with intent to commit theft).

A section 995 motion to set aside the information was granted as to counts I and III—the latter by concession of the district attorney. Petitioner's sole challenge is to denial of the motion to dismiss count II.

The People's position is stated concisely: "We contend, quite simply, that at the time of the intercourse Ms. R., the victim, was 'unconscious of the nature of the act': because of [petitioner's] misrepresentation she believed it was in the nature of a medical treatment and not a simple, ordinary act of sexual intercourse." Petitioner, on the other hand, stresses that the victim was plainly aware of the *nature* of the act in which she voluntarily engaged, so that her motivation in doing so (since it did not fall within the proscription of section 261, subdivision (2)) is irrelevant.

Our research discloses sparse California authority on the subject. A victim need not be totally and physically unconscious in order that section 261, subdivision (4) apply. In *People* v. *Minkowski* (1962) 204 Cal.App.2d 832 [23 Cal.Rptr. 92], the defendant was a physician who "treated" several victims for menstrual cramps. Each victim testified that she was treated in a position with her back to the doctor, bent over a table, with feet apart, in a dressing gown. And in each case the "treatment" consisted of the defendant first inserting a metal instrument, then substituting an instrument which "felt different"—the victims not realizing that the second instrument was in fact the doctor's penis. The precise issue before us was never tendered in *People* v. *Minkowski* because the petitioner there *conceded* the sufficiency of evidence to support the element of consciousness.

The decision is useful to this analysis, however, because it exactly illustrates certain traditional rules in the area of our inquiry. Thus, as a leading authority has written, "if deception causes a misunderstanding as to the fact itself (fraud in the *factum*) there is no legally-recognized consent because what happened is not that for which consent was given; whereas consent induced by fraud is as effective as any other consent, so far as direct and immediate legal consequences are concerned, if the deception relates not to the thing done but merely to some collateral matter (fraud in the inducement)." (Perkins & Boyce, Criminal Law (3d ed. 1982) ch. 9, § 3, p. 1079.)

The victims in *Minkowski* consented, not to sexual intercourse, but to an act of an altogether different nature, penetration by medical instrument. The consent was to a pathological, and not a carnal, act, and the mistake was, therefore, in the *factum* and not merely in the inducement.

Another relatively common situation in the literature on this subject—discussed in detail by Perkins (*supra,* at p. 1080) is the fraudulent obtaining of intercourse by impersonating a spouse. As Professor Perkins observes, the courts are not in accord as to whether the crime of rape is thereby committed. "[T]he disagreement is not in regard to the underlying principle but only as to its application. Some courts have taken the position that such a misdeed is fraud in the inducement on the theory that the woman consents to exactly what is done (sexual intercourse) and hence there is no rape; other courts, with better reason it would seem, hold such a misdeed to be rape on the theory that it involves fraud in the *factum* since the woman's consent is to an innocent act of marital intercourse while what is actually perpetrated upon her is an act of adultery. Her innocence seems never to have been questioned in such a case and the reason she is not guilty of adultery is because she did not consent to adulterous intercourse. Statutory changes in the law of rape have received attention earlier and need not be

repeated here." (Perkins & Boyce, Criminal Law (3d ed. 1982) ch. 9, § 3, pp. 1080-1081, fns. omitted.)

In California, of course, we have by statute[3] adopted the majority view that such fraud is in the *factum,* not the inducement, and have thus held it to vitiate consent. It is otherwise, however, with respect to the conceptually much murkier statutory offense with which we here deal, and the language of which has remained essentially unchanged since its enactment (as § 261, subd. (5), now subd. (4)) in 1872.

The language itself could not be plainer. It defines rape to be "an act of sexual intercourse" with a nonspouse, accomplished where the victim is "at the time unconscious of the nature of the act . . ." (§ 261, subd. (4).) Nor, as we have just seen, can we entertain the slightest doubt that the Legislature well understood how to draft a statute to encompass fraud in the *factum* (§ 261, subd. (5)) and how to specify certain fraud in the inducement as vitiating consent.[4] Moreover, courts of this state have previously confronted the general rule that fraud in the inducement does not vitiate consent. (*People* v. *Harris* (1979) 93 Cal.App.3d 103, 113-117 [155 Cal.Rptr. 472]; *Mathews* v. *Superior Court* (1981) 119 Cal.App.3d 309, 312 [173 Cal.Rptr. 820].) *Mathews* found section 266 (fraudulent procurement of a female for illicit carnal connection) inapplicable where the facts showed that the defendant, impersonating an unmarried woman's paramour, made sexual advances to the victim with her consent. While the facts demonstrate classic fraud in the *factum,* a concurring opinion in *Mathews* specifically decried the lack of a California statutory prohibition against fraudulently induced consent to sexual relations in circumstances other than those specified in section 261, subdivision (5) and then-section 268.

The People, however, direct our attention to Penal Code section 261.6, which in their opinion has changed the rule that fraud in the inducement does not vitiate consent. That provision reads as follows: "In prosecutions under sections 261, 286, 288a or 289, in which consent is at issue, 'consent' shall be defined to mean positive cooperation in act or attitude pursuant to an act of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved."

---

[3]Section 261, subdivision (5) reads as follows: "Where a person submits under the belief that the person committing the act is the victim's spouse, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce the belief."

[4]Prior to its repeal by Statutes 1984, chapter 438, section 2, section 268 provided that: "Every person who, under promise of marriage, seduces and has sexual intercourse with an unmarried female of previous chaste character, is punishable by imprisonment in the state prison, or by a fine of not more than five thousand dollars [$5,000], or by both such fine and imprisonment."

We find little legislative history for this section beyond that contained in the 1982 Summary Digest, to wit:

"Existing law proscribes certain forms of sexual conduct, such as oral copulation under specified circumstances and penetration of the genital or anal openings of another person by a foreign object, as specified.

"This bill would revise the above provisions; provide that penetration of the genital or anal openings of another by a foreign object by force and violence, in concert with another, is punishable by imprisonment for 5, 7, or 9 years; establish the crime of sexual battery, as defined; and define the term 'consent' for the purpose of designated prosecutions in which consent is at issue." In addition, the author of a Pacific Law Journal article has concluded that the statute was enacted in response to *People* v. *Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337], in order to provide an explicit definition of consent to be used in prosecutions in which consent was at issue. (*Review of 1982 Legislation* (1983) 14 Pacific L.J. 357, 547, 548, fn. 8.) Section 261.6 was enacted as a part of Chapter 1111, Statutes of 1982, which amended various substantive sex crime statutes and created the crime of sexual battery. (§ 243.4.)

If the Legislature at that time had desired to correct the apparent oversight decried in *Mathews, supra,*[5]—it could certainly have done so. But the Attorney General's strained reading of section 261.6 would render section 261, subdivision (5) meaningless surplusage; and we are " 'exceedingly reluctant to attach an interpretation to a particular statute which renders other existing provisions unnecessary.' " (*People* v. *Olsen* (1984) 36 Cal.3d 638, 647 [205 Cal.Rptr. 492, 685 P.2d 52].)

Finally, the Attorney General cites *People* v. *Howard* (1981) 117 Cal.App.3d 53 [172 Cal.Rptr. 539]. There, the court dealt with section 288a, subdivision (f) and section 286, subdivision (f) making criminal oral copulation or sodomy between adults where one person is "unconscious of the nature of the act." But in *Howard, supra,* the victim was a 19-year-old with the mental capacity of a 6-to-8-year-old, who "simply [did] not understand the nature of the act in which he participat[ed]." (117 Cal.App.3d 53, 55.) Whether or not we agree with the *Howard* court's analysis, we note that here, in contrast, there is not a shred of evidence on the record before us to suggest that as the result of mental retardation Ms. R. lacked the capacity to appreciate the nature of the sex act in which she engaged.

---

[5]It is not difficult to conceive of reasons why the Legislature may have consciously wished to leave the matter where it lies. Thus, as a matter of degree, where consent to intercourse is obtained by promises of travel, fame, celebrity and the like—ought the liar and seducer to be chargeable as a rapist? Where is the line to be drawn?

On the contrary, her testimony was clear that she precisely understood the "nature of the act," but, motivated by a fear of disease, and death, succumbed to petitioner's fraudulent blandishments.

To so conclude is not to vitiate the heartless cruelty of petitioner's scheme, but to say that it comprised crimes of a different order than a violation of section 261, subdivision (4).

Let a peremptory writ of prohibition issue restraining respondent from taking further action upon count II (a violation of Pen. Code, § 261, subd. (4)) in People v. Daniel Kayton Boro, aka Jerry K. Russo, Emmett Boro and Dan Borghello, San Mateo County Superior Court No. C-13489, other than dismissal. The stay of trial heretofore imposed shall remain in effect until the finality of this opinion.[6]

Racanelli, P. J., concurred.

**HOLMDAHL, J.**—I respectfully dissent.

All concerned with this case are handicapped by what my colleagues call "sparse California authority on the subject" before us. Neither are we aided by the "little legislative history" concerning the 1982 enactment of Penal Code section 261.6.[1]

I agree with my colleagues' conclusion that in enacting section 261.6 the Legislature could have corrected, but did not, "the apparent oversight decried in *Mathews* . . . ." I disagree, however, with their apparent conclusion that section 261.6 does not apply in the present case.

While *Mathews* did involve alleged false pretenses, that opinion was concerned solely with an interpretation of section 266. The new section 261.6 does not apply to prosecutions under section 266. Section 261.6 does, however, expressly apply to "prosecutions under Section 261, 286, 288a, or 289, in which consent is at issue . . . ."

The case before us concerns a prosecution under section 261, subd. (4), and "consent is at issue." Consequently, section 261.6, defining "consent" applies in this case.[2] It is apparent from the abundance of appropriate ad-

---

[6]We note that by separate opinion filed this date in AO27931, we have commanded respondent to sever the remaining charge in this case from a separate fraud case on file in San Mateo County Superior Court No. C-13551.

[1]Apparently, no published decision as yet deals with section 261.6.

[2]While the word "consent" appears only in section 261, subd. (1), all the subdivisions concern the victim's state of mind.

jectives and adverbs in the statute that the Legislature intended to the point of redundancy to limit "consent" to that which is found to have been truly free and voluntary, truly unrestricted and knowledgeable. Thus, section 261.6 provides: "In prosecutions under Section 261, 286, 288a, or 289, in which consent is at issue, 'consent' shall be defined to mean *positive* co-operation in act or attitude pursuant to an exercise of *free* will. The person must act *freely* and *voluntarily* and *have knowledge* of the nature of the act or transaction involved." (Italics added.)

"[C]ourts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them. [Citations.]" (*People* v. *Jones* (1964) 228 Cal.App.2d 74, 83 [39 Cal.Rptr. 302].) Recourse to the Oxford English Dictionary (1978) indicates that the "positive" of "positive cooperation" is that which is "free from qualifications, conditions, or reservations; absolute, unconditional; opposed to *relative* and *comparative.*" (*Id.*, vol. 4, p. 1152, italics in original.)

"Free will" is defined as "[s]pontaneous will, unconstrained choice (to do or act) . . . left to or depending upon one's choice or election." (*Id.*, vol. 4, "F.," p. 528.)

"Freely" is defined as "[o]f one's own accord, spontaneously; without constraint or reluctance; unreservedly, without stipulation; readily, willingly." (*Id.*, vol. 4, "F.," p. 526.)

"Voluntarily" is defined as "[o]f one's own free will or accord; without compulsion, constraint, or undue influence by others; freely, willingly. . . . Without other determining force than natural character or tendency; naturally, spontaneously." (*Id.*, vol. 12, "V.," p. 302.)

Further, I take the statute's use of "act or attitude" and "act or transaction" to mean more than an alleged victim's knowledge that she would be engaging in the physical act of sexual intercourse and more than that she intended to do so. Those phrases, in combination with the adjectives and adverbs discussed, lead me to conclude that while the Legislature in section 261.6 did not expressly repeal the legalisms distinguishing "fraud in the *factum*" and "fraud in the inducement," its intention certainly was to restrict "consent" to cases of true, good faith consent, obtained without substantial fraud or deceit.

I believe there is a sufficient basis for prosecution of petitioner pursuant to section 261, subd. (4). I would deny the writ.

A petition for a rehearing was denied February 21, 1985. Holmdahl, J., was of the opinion that the petition should be granted. The petition of real party in interest for a hearing by the Supreme Court was denied April 4, 1985.