STATE of Iowa, Plaintiff–Appellee,

v.

Lawrence Merle VANDER ESCH, Defendant–Appellant.

No. 01–1342.

Court of Appeals of Iowa.

Nov. 15, 2002.

Francis Goodwin of Baron, Sar, Goodwin, Gill & Lohr, Sioux City, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, and Mark J. Schouten, County Attorney, for appellee.

Heard by VOGEL, P.J., and MAHAN and EISENHAUER, JJ.

MAHAN, J.

Lawrence Vander Esch appeals his conviction, based on a guilty plea, on four counts of sexual abuse in the third degree, in violation of Iowa Code sections 709.1 and 709.4(1) (2001). Vander Esch claims section 709.1(1) does not permit a conviction for sexual abuse on a theory of fraud or deception. He also claims the language of the statute does not give fair notice of the conduct prohibited by the statute. We affirm.

### I. Background Facts and Proceedings

Vander Esch was a co-owner of Pizza Ranch restaurants. In June 1998 he asked a young male employee, John Doe # 1, if he would be willing to donate a sample of semen for a scientific research project.[1] Doe # 1 was promised fifty dol-

---

**1.** At various times Vander Esch represented he was authorized to collect semen samples by the University of Iowa, Iowa State University, or the Sioux County Public Health Nurse. Vander Esch indicated human sperm

lars for a successful donation, and he agreed to the procedure.[2] Vander Esch showed Doe #1 his own penis "to make him feel comfortable." Vander Esch then put a condom on Doe #1, and when the procedure was finished he "milked" the penis to "get out all the semen," then took the condom off.[3] He tied the condom, and put it on ice, stating it would be sent to a laboratory for testing.[4] He later told Doe #1 his sperm count was not high enough for him to be paid for the sample.[5] Similar circumstances occurred on a second occasion with Doe #1, and on two occasions with John Doe #2, who was also a young male employee at the restaurant. Vander Esch was never authorized by any scientific body to collect human semen samples. The victims indicated they would not have consented to these sex acts if they had known no legitimate research project existed.

Vander Esch was charged with four counts of third-degree sexual abuse under section 709.4(1) ("The act is done by force or against the will of the other person....."). He filed a motion to dismiss, claiming the young men had consented to the sexual contact. He relied on section 709.1(1), which defines sexual abuse as a sex act under the following circumstances:

The act is done by force or against the will of the other. If the consent or acquiescence of the other is procured by threats of violence toward any person or if the act is done while the other is under the influence of a drug inducing sleep or is otherwise in a state of unconsciousness, the act is done against the will of the other.

Vander Esch claimed section 709.1(1) set forth the only means recognized in Iowa to negate consent, and that fraud and deceit do not negate consent.

The district court looked at section 709.5, which states, "the circumstances surrounding the commission of the act may be considered in determining whether or not the act was done by force or against the will of the other." The court concluded section 709.1(1) gave examples of conduct that were "against the will," but did not exclude other possible means. The court concluded:

> Since Iowa law allows the consideration of all surrounding circumstances, the minutes of testimony in this case, if unexplained, would warrant a conviction. The harm Iowa's law seeks to prevent is the same whether sexual contact is obtained through threats of violence, drugs, or deception. A fair reading of Chapter 709 gives adequate notice that

samples were required for "prostate" cancer research.

**2.** One victim was promised $30,000 for something "[he did] every day." He was shown a cash register receipt and told Vander Esch could set up direct tuition payments.

**3.** Vander Esch explained to the victims that he had worked for the Sioux County Public Health Nurse and was specially trained to apply and remove a "collection device". He explained that he needed to be present during the procedure to prevent air exposure to the semen sample during removal of the condom and to "certify" the identity of the donor.

**4.** In one instance, Vander Esch and a victim drove to the University of Iowa Hospitals where Vander Esch went through the motions of carrying a semen sample into the hospital. The victim stayed in the car and was informed Vander Esch had deposited the sample for evaluation.

**5.** It is clear no one was ever paid, and that Vander Esch told all the victims their sperm counts were too low to qualify for payment. He urged the victims to try again and advised them they could achieve higher sperm counts if they were willing to let someone else perform the procedure on them.

sexual contact obtained through deceit is sexual abuse.

After the district court denied his motion to dismiss, Vander Esch pled guilty to the charges against him. He was sentenced to concurrent terms of. imprisonment not to exceed ten years. Vander Esch appeals.

## II. Standard of Review

■ We review matters of statutory construction for the correction of errors at law. *State v. Randle*, 603 N.W.2d 91, 92 (Iowa 1999).

## III. Statutory Construction

■ We apply the rules of statutory construction only when the explicit terms of a statute are ambiguous. *State v. Schweitzer*, 646 N.W.2d 117, 120 (Iowa Ct. App.2002). A statute is ambiguous if reasonable persons could disagree as to its meaning. *IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001). The supreme court has stated:

> to resolve ambiguity and ultimately determine legislative intent [the court] consider[s] (1) the language of the statute; (2) the objects sought to be accomplished; (3) the evils sought to be remedied; and (4) a reasonable construction that will effectuate the statute's purpose rather than one that will defeat it.

*Id.* (citations omitted).

■ When we engage in statutory construction, the fundamental rule is to ascertain and, if possible, give effect to the intention or purpose of the legislature as expressed in the statute. *Stille v. Iowa Dep't of Transp.*, 646 N.W.2d 114, 116 (Iowa Ct.App.2001). Statutes regarding sex offenses are common examples of the employment of strict liability intended to protect the public welfare. *State v. Christensen*, 414 N.W.2d 843, 846 (Iowa Ct.App. 1987).

■ In considering section 709.1(1), Vander Esch relies on the doctrine of *inclusio unius est exclusio alterius,* which means that when certain items are listed, there is an inference that the exclusion of other items is intentional. *See TLC Home Health Care, L.L.C. v. Iowa Dep't of Human Servs.,* 638 N.W.2d 708, 716 (Iowa 2002). He claims that under section 709.1(1), consent or acquiescence is negated only if: (1) it was procured by threats of violence toward any person; (2) the victim is under the influence of a drug inducing sleep; or (3) the victim is otherwise in a state of unconsciousness. He asserts that because the legislature listed only these three items, these are the only means statutorily recognized to negate consent in Iowa. He points out that fraud and deceit are not listed in section 709.1(1).

■ We note the rule that inclusion implies exclusion is a useful tool of statutory construction, but it is subordinate to the primary rule that legislative intent governs statutory interpretation. *State v. Carpenter,* 616 N.W.2d 540, 543 (Iowa 2000). The rule does not apply if there is a special reason for mentioning one thing and none for mentioning another which is otherwise within the statute. *Id.* at 544. In addition, the rule is not applied where there is no evidence of legislative intent for it to apply. *Id.*

■ Under section 4.4(2), we presume an entire statute is intended to be effective. *State v. Lewis,* 514 N.W.2d 63, 69 (Iowa 1994); *Schweitzer,* 646 N.W.2d at 120 ("A statute should be construed so that effect will be given to all of its provisions, and no part is superfluous or void."). In chapter 709, section 709.1(1) is not the only provision which deals with whether an act is done by force or against the will of another. We determine the district court

properly looked to section 709.5, which provides:

> Under the provisions of this chapter it shall not be necessary to establish physical resistance by a person in order to establish that an act of sexual abuse was committed by force or against the will of the person. *However, the circumstances surrounding the commission of the act may be considered in determining whether or not the act was done by force or against the will of the other.*

(Emphasis added.) This section means *all* the circumstances, subjective as well as objective, should be considered. *State v. Plaster,* 424 N.W.2d 226, 233 (Iowa 1988); *State v. Bauer,* 324 N.W.2d 320, 322 (Iowa 1982).

In looking at all of the provisions of chapter 709, we concur in the district court's conclusion that in section 709.1(1), "the legislature intended to give examples of conduct that is 'against the will,' while not excluding other possible means." Vander Esch's interpretation of section 709.1(1) would make superfluous or void the provision of section 709.5 to consider all of the circumstances surrounding the act, contrary to the mandate of section 4.4(2).

### IV. Types of Fraud

Vander Esch also contends cases from other jurisdictions do not support the district court's interpretation of chapter 709 because these cases interpret different statutes. The State concedes the statutes of other states differ from Iowa's sexual abuse statute.

Vander Esch goes on to argue:

> The standard of voluntary consent which the district court adopted would open the door to litigation far beyond anything contemplated by the legislature. The claims of lack of consent based on deception under that standard would easily include that "he didn't really love me, he just said he did to get me into bed" and "it wasn't voluntary because I would never have agreed if I had known he was married."

On this issue we look to a distinction made by courts of other states. In *Boro v. Superior Court,* 163 Cal.App.3d 1224, 210 Cal.Rptr. 122, 124 (1985), the court noted:

> if deception causes a misunderstanding as to the fact itself (fraud in the *factum*) there is no legally-recognized consent because what happened is not that for which consent was given; whereas consent induced by fraud is as effective as any other consent, so far as direct and immediate legal consequences are concerned, if the deception relates not to the thing done but merely to some collateral matter (fraud in the inducement).

(quoting R. Perkins & R. Boyce, Criminal Law (3d ed.1982) ch. 9, § 3, p. 1079).

In *Boro,* the victim consented to sex after the defendant told her she had a "dangerous, highly infectious and perhaps fatal disease" which could be cured by having sexual intercourse with a person who had been injected with a serum. The court concluded this was fraud in the inducement, which did not vitiate consent.[6] *Boro,* 210 Cal.Rptr. at 126. The victim had clearly understood the nature of the act, but had "succumbed to petitioner's fraudulent blandishments." *Id.*

In other cases, however, where consent was to a pathological and not a carnal act, this is considered to be fraud in the *factum,* and not merely fraud in the induce-

---

6. In response to *Boro,* the California legislature amended its laws to include a new offense called "Inducing consent to sex act by fraud or fear." Patricia Falk, *Rape by Fraud and Rape by Coercion,* 64 Brook. L.Rev. 39, 111 (1998).

ment. *People v. Ogunmola*, 193 Cal. App.3d 274, 238 Cal.Rptr. 300, 304 (1987). In *Ogunmola*, the victims consented to a gynecological examination, but instead of a speculum, the doctor inserted his penis into their vaginas and the court concluded the victims had not consented to the nature of the act which was performed. *Id.* See also *State v. Ely*, 114 Wash. 185, 194 P. 988, 991 (1921).

In *McNair v. State*, 108 Nev. 53, 825 P.2d 571, 572–73 (1992), the victims likewise had consented to a gynecological examination, but as the Nevada court found, "Unfortunately, the trusting patients discovered that they had unwittingly positioned themselves for an anal penile penetration by their physician." The court concluded that when a defendant had obtained sexual intercourse by means of fraud, legally recognized consent is negated. *McNair*, 825 P.2d at 574. The victims had consented to one thing, and the defendant did something materially different. *Id.* We note that like our Iowa statute, the Nevada statute "only requires the commission of the act of sexual penetration against the will of the victim." *Id.*

Two Illinois cases are also instructive. In *People v. Costello*, 224 Ill.App.3d 500, 166 Ill.Dec. 784, 586 N.E.2d 742 (1992), the defendant posed as a medical doctor and offered the victim a free medical examination, which including touching her breasts and vagina. The court stated, "There is no evidence to suggest that [the victim] would have consented to defendant's acts of sexual penetration if she was aware that defendant was not the doctor he represented himself to be," and concluded, "undoubtedly this deception took away [the victim's] ability to give knowing consent to these acts." *Costello*, 166 Ill.Dec. 784, 586 N.E.2d at 748. In *People v. Quinlan*, 231 Ill.App.3d 21, 172 Ill.Dec. 749, 596 N.E.2d 28 (1992), the defendant, a respiratory

therapist, told the victim she needed a special test, in which he placed his fingers in her rectum and vagina. The court found the victim had consented to an invasive medical procedure, not to sexual acts, and concluded her consent was vitiated because it was received through deceit. *Quinlan*, 172 Ill.Dec. 749, 596 N.E.2d at 31.

As in the cases outlined above, the victims in the present case consented to a pathological, or medical, procedure. They did not consent to be participants in a sex act. Thus, the fraud in this case is fraud in the *factum*, and not fraud in the inducement. When consent is caused by fraud in the *factum*, there is no legally-recognized consent. *See Boro*, 210 Cal. Rptr. at 124. The statements and fears outlined by Vander Esch above clearly come within the ambit of fraud in the inducement, which does not negate consent. Thus, we believe our holding will not open the door to excessive litigation.

## V. Due Process

Vander Esch claims the district court's ruling violates the Due Process Clause because section 709.5 fails to give fair notice of the conduct prohibited by that ruling. He did not raise this issue in his motions to dismiss. Because this constitutional claim was not asserted in district court, it will not be considered on appeal. *See State v. Leutfaimany*, 585 N.W.2d 200, 209 (Iowa 1998).

We affirm Vander Esch's convictions for third-degree sexual abuse.

**AFFIRMED.**

HUITINK, J., takes no part.