[No. B233796. Second Dist., Div. Four. Jan. 2, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
JULIO MORALES, Defendant and Appellant.

584

COUNSEL

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Elaine F. Tumonis, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WILLHITE, J.—A man enters the dark bedroom of an unmarried woman after seeing her boyfriend leave late at night, and has sexual intercourse with the woman while pretending to be the boyfriend. Has the man committed rape? Because of historical anomalies in the law and the statutory definition of rape, the answer is no, even though, if the woman had been married and the man had impersonated her husband, the answer would be yes.

In the present case, defendant Julio Morales entered the dark bedroom of victim Jane Doe after her boyfriend departed and, without disclosing his identity, had sexual intercourse with her. He was charged with rape of an unconscious person under Penal Code section 261, subdivision (a)(4).[1] The jury was instructed with CALCRIM No. 1003, which, as given, stated in part that "[a] woman is unconscious of the nature of the act if she is unconscious or asleep or not aware that the act is occurring or *not aware of the essential characteristics of the act because the perpetrator tricked, lied to, or concealed information from her.*" (Italics added.) The prosecutor argued both

---

[1] Further undesignated statutory references are to the Penal Code.

correct and incorrect theories under which Jane was unconscious: that she was asleep (correct), and that she was not aware of the essential characteristics of the act because defendant deceived her into believing he was her boyfriend (as we explain below, incorrect). Defendant was convicted of violating section 261, subdivision (a)(4), and the trial court sentenced him to the low term of three years in state prison, from which judgment defendant appeals.[2] Because we cannot discern from this record whether the jury convicted defendant on the correct or incorrect theory, we must reverse.[3]

## BACKGROUND

*Prosecution's Evidence*

On February 20, 2009, 18-year-old "Jane Doe" went to a party with her boyfriend, Victor, and another friend. Jane's brother, Filiberto, and several of his friends, including defendant, also attended the party. Jane drank three to five beers at the party. Jane, Victor, and her friend left the party at 1:00 or 2:00 a.m., and stopped to pick up some fast food before going to Jane's house to eat.[4] Jane changed into her pajamas before sitting down at the dining room table to eat.

Filiberto and his friends arrived at Jane's house while Jane and Victor were eating, and sat in the living room. Jane and Victor went into her bedroom after they finished eating, turned off the light, and lay down on her bed. Jane asked Victor to spend the night, but he declined because he had something to do the next morning. They talked about having sex, but Victor did not have a condom and they never engaged in unprotected sex, so they decided not to. Eventually, Jane fell asleep while Victor was still there. Victor left sometime later.

In the meantime, Filiberto had left his friends in the living room while he went outside to talk on the phone. About five or 10 minutes after Victor left, two of the friends went outside to get Filiberto, leaving defendant and two others—Robert, who was asleep on the couch, and Tony—in the living room.

According to Jane, she woke up to the sensation of having sex. She was in a different position on the bed, perpendicular to the position she had been in when she fell asleep. She was confused because she and Victor had agreed

---

[2] This appeal is from the judgment in defendant's second trial. His first trial ended in a mistrial after the jury was unable to reach a verdict.

[3] In doing so, we urge the Legislature to reexamine section 261, subdivision (a)(4) and (5), and correct the incongruity that exists when a man may commit rape by having intercourse with a woman when impersonating a husband, but not when impersonating a boyfriend.

[4] Jane lived with her mother, her brother Filiberto, and a younger sister.

not to have sex that night. When light coming through a crack in the bedroom door illuminated the face of the person having sex with her, i.e., defendant, she realized it was not Victor and tried to push him away. Defendant grabbed her thighs and pushed his penis back into her vagina. She pushed him away again and began to cry and yell. Defendant left her room; Jane locked her door and called Victor, asking him to come back to her house.

When Victor got to the house and learned what had happened, he called the police. Deputy Sheriff Peralta and other deputies responded and searched the area, eventually finding defendant crouched down behind some bushes. While being detained in Deputy Peralta's patrol car, defendant spoke to another deputy, Deputy Leyn. He admitted that he had gone into Jane's room while she was asleep. He said that he had kissed her and that she kissed him back, but he thought she might still be asleep. He pulled down her pajama bottoms, got on top of her, and started to have sex. He said she probably thought he was her boyfriend, and when she realized he was not, she started screaming. During a second interview with Deputy Leyn, defendant once again described what happened, including that Jane was asleep when he put his penis into her vagina, and wrote out a statement admitting that he kissed Jane and touched her vagina while she was asleep.

*Defense Evidence*

Defendant testified that sometime after Victor had left Jane's bedroom, Filiberto's friend Tony and he went into Jane's room, at Tony's suggestion. They nudged Jane to try to awaken her so she could come out and drink with them. Defendant then realized that Tony was no longer in the room, and the door was closed. He tried to leave, but the door would not open.

He tried to wake Jane up by nudging her again, but she did not move. He thought she was attractive, so he kissed her on the cheek. She turned toward him, and they kissed some more. He thought she was not asleep because she responded to his kisses, but he also thought she believed he was her boyfriend.[5] They kissed for several minutes, and he became aroused. He began to take her pajamas and underwear off, and she lifted her hips to help him. He unbuckled his belt, pulled down his pants, and began to have sex. He stopped because he felt he was betraying his girlfriend; he did not recall Jane pushing him away, and he did not try to reinsert his penis after he pulled out of her.

When he went to leave the room, it felt like someone was holding the door shut. He finally was able to open the door, and he saw his friend Tony

---

[5] Defendant gave conflicting testimony about whether he attempted to identify himself. At first he testified that he did not identify himself and believed Jane did not know who he was, but he later testified that he told Jane he was not her boyfriend.

standing outside, laughing. Tony told him that Jane was Filiberto's sister. Defendant went to Filiberto, told him that he "fucked up," and started to walk home.

While he was walking, he received a text message telling him that the police were looking for him. When he saw a police car, he was scared and tried to hide, but he was taken into custody. He testified that he did tell Deputy Leyn that he touched Jane's vagina while she was asleep, but he did not tell the deputy that he knew Jane was asleep when he pulled down her pajamas and had sex with her.

## DISCUSSION

 Defendant asserts two instructional errors on appeal. First, he contends the trial court's instruction on rape of an unconscious person, CALCRIM No. 1003, was flawed because it allowed the jury to convict on an improper legal theory, i.e., that defendant fraudulently concealed that he was not Jane's boyfriend when he had sexual intercourse with her. Second, he contends the trial court erred by failing to instruct on mistake of fact regarding the issue of consent. His second contention fails because consent is not at issue in a prosecution for rape of an unconscious person. But as to his first contention, we conclude that under the peculiar facts of this case, reversal is required because the prosecutor argued an incorrect theory of guilt, the instruction permitted the jury to convict on that theory, and the record does not permit us to find that the jury relied only on the prosecutor's correct theory.

### A. Section 261, Subdivision (a)(4) and CALCRIM No. 1003

Section 261 defines rape of an unconscious person as follows: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: [¶] . . . [¶] (4) Where a person is at the time unconscious of the nature of the act, and this is known to the accused. As used in this paragraph, 'unconscious of the nature of the act' means incapable of resisting because the victim meets one of the following conditions: [¶] (A) Was unconscious or asleep. [¶] (B) Was not aware, knowing, perceiving, or cognizant that the act occurred. [¶] (C) Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraud in fact. [¶] (D) Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraudulent representation that the sexual penetration served a professional purpose when it served no professional purpose." (§ 261, subd. (a)(4).)

At trial, the jury was instructed before closing arguments with, among other instructions, CALCRIM No. 1003. That instruction stated: "The defendant is charged with raping a woman who was unconscious of the nature of the act in violation of Penal Code Section 261(a)(4). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant had sexual intercourse with a woman; [¶] 2. He and the woman were not married to each other at the time of the intercourse; [¶] 3. The woman was unable to resist because she was unconscious of the nature of the act; [¶] AND [¶] 4. The defendant knew that the woman was unable to resist because she was unconscious of the nature of the act. [¶] Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis. Ejaculation is not required. [¶] *A woman is unconscious of the nature of the act if she is unconscious or asleep or not aware that the act is occurring or not aware of the essential characteristics of the act because the perpetrator tricked, lied to, or concealed information from her.*" (Italics added.)

Defense counsel objected to the last part of the final sentence, arguing that defendant did not trick, lie, or conceal information from Jane. The court indicated that counsel could argue that point to the jury, and overruled the objection.

In the opening portion of the prosecution's argument to the jury, the prosecutor argued that Jane was asleep and did not wake up until after defendant was having sex with her. Defense counsel then argued that Jane was awakened when she was moved on the bed, and that she was awake when she kissed defendant and had sex with him, although she may have thought he was her boyfriend Victor. Counsel argued, however, that defendant did not do anything to make her think that he was Victor. In his closing argument, the prosecutor began by pointing out that the defense was arguing that if the jury believed defendant's testimony that Jane was awake, there was reasonable doubt. The prosecutor then said, "I don't think you can believe and rely on what his statements were yesterday. But before I do get to why that's the case, *I want you to know it's also our position that even if you did believe what he said, he admitted, in part, that he did, in fact, commit this crime.*" (Italics added.) The prosecutor pointed to the portion of the jury instruction that explains what "unconscious of the nature of the act" means, including the portion stating that it includes when the woman is not aware of essential characteristics of the act because the perpetrator tricks, lies to, or conceals information from her. He read from defendant's testimony in which defendant admitted that he kept the lights off and did not tell Jane who he was, knowing that her boyfriend had just left the room, and argued that

defendant understood that "that's an essential detail, to know who it is you're having sex with, to be aware of that."[6]

On appeal, defendant argues that this theory of guilt is contrary to California law because it involves fraud in the inducement rather than fraud in the fact, and that the giving of CALCRIM No. 1003 was improper because it allowed the jury to find defendant guilty even if the evidence established only fraud in the inducement.

■ The distinction between fraud in the inducement and fraud in the fact is an important one. "Fraud in the fact occurs when the defendant obtains the victim's consent to perform one act, but instead engages in another act. [Citations.] In that situation, consent is absent, . . . because the victim never agreed to the particular act complained of. [Citation.] [¶] By contrast, fraud in the inducement takes place when the defendant makes misrepresentations to the victim in order to get her consent for a particular act, and then proceeds to carry out that very act. [Citations.] In that situation, courts have historically been reluctant to impose criminal liability on the defendant since the victim consented to the particular act performed, albeit under false pretenses. [Citation.]" (*People v. Pham* (2009) 180 Cal.App.4th 919, 925 [103 Cal.Rptr.3d 366]; see *People v. Babaali* (2009) 171 Cal.App.4th 982, 987–988 [90 Cal.Rptr.3d 278].)

■ Although lack of consent is not an element of the crime of rape of an unconscious person (see pt. B., *post*), the concept of unconsciousness is related to the issue of consent. (*People v. Ogunmola* (1987) 193 Cal.App.3d 274, 279 [238 Cal.Rptr. 300].) Under section 261.6, consent requires that the consenting party "act freely and voluntarily and have knowledge of the nature of the act or transaction involved." One who is unconscious as defined in section 261, subdivision (a)(4), necessarily does not act freely and voluntarily with knowledge of the nature of the act.

Defendant argues that a person who impersonates another in order to accomplish sexual intercourse engages in fraud in the inducement, which precludes criminal liability. But the question whether one who impersonates another in order to accomplish sexual intercourse commits fraud in the fact or fraud in the inducement is one that has vexed courts for more than a hundred

---

[6] The Attorney General argues that the prosecutor did not argue that defendant was guilty even if Jane was awake because he concealed his identity from her. We disagree. Although the Attorney General is correct that, immediately after the above quoted ·passage, the prosecutor argued that the reason Jane was not aware of defendant's identity and could not provide a lot of details was because she was asleep, the fact is that he first argued that defendant was guilty even if his testimony that Jane was awake is believed: "[I]t's also our position that even if you did believe what he said, he admitted, in part, that he did, in fact, commit this crime."

years. (See, e.g., Falk, *Rape by Fraud and Rape by Coercion* (1998) 64 Brook. L.Rev. 39, 65–69 (hereafter, Falk); Annot., Rape by Fraud or Impersonation (1963) 91 A.L.R.2d 591 (hereafter, Rape by Fraud); Scutt, *Fraudulent Impersonation and Consent in Rape* (1975–1976) 9 U. Queensland L.J. 59.) Although many early cases, from the United States as well as England, concluded that sexual intercourse by fraudulent impersonation did not constitute rape because the victim consented to intercourse, albeit under a mistaken belief as to the identity of the perpetrator (see Rape by Fraud, *supra*, 91 A.L.R.2d at pp. 595–598 [§§ 5[a], 5[b]], and cases cited therein), other cases concluded that fraudulent impersonation constitutes fraud in fact, and vitiates consent (see Rape by Fraud, *supra*, 91 A.L.R.2d at pp. 600–601 [§ 8]; Falk, *supra*, 64 Brook. L.Rev. at pp. 66–69, and cases cited therein). As one judge explained in an 1884 case arising in Ireland, in which the court affirmed a conviction of rape involving a defendant who impersonated the victim's husband, " 'an act done under the bona fide belief that it is another act different in its essence is not in law the act of the party. . . . The person by whom the act was to be performed was part of its essence.' " (Rape by Fraud, *supra*, 91 A.L.R.2d at p. 601, quoting from *Reg. v. Dee* (Ir. 1884) 15 Cox CC 579.)

Even in California, courts have been inconsistent when characterizing sex crimes involving impersonation. For example, in *Mathews v. Superior Court* (1981) 119 Cal.App.3d 309 [173 Cal.Rptr. 820] (*Mathews*), the defendant was charged under sections 266 and 664 with attempted fraudulent procurement of a female to have illicit carnal connection, based upon allegations that he sexually fondled and caressed a woman while she was in the bed she usually shared with her boyfriend. (*Mathews*, at pp. 310–311.) The majority concluded the charges could not be sustained because "one who obtains sexual favors *for himself* by fraud cannot be held to 'procure' within the meaning of [section 266]." (*Id.* at p. 311.) Although the majority opinion did not address the impersonation issue, in a concurring opinion, Acting Presiding Justice Paras impliedly referred to impersonation as fraud in the inducement. The justice, who wrote that he offered his concurring opinion "to emphasize what I perceive as an obvious and serious oversight in our Penal Code," noted that "[a]ny person who fraudulently obtains the consent of another to sexual relations escapes criminal liability (at least as a sex offender under tit. IX of the Pen. Code), unless he (or she) either masquerades as the victim's spouse (§ 261, subd. [(a)(5)]),[7] or offers marriage in exchange for sexual favors from 'an unmarried female of previous chaste character.' ([Former] § 268[, repealed by Stats. 1984, ch. 438, § 2, p. 1821].) In all other situations, the

---

[7] Section 261, subdivision (a)(5) provides that rape includes an act of sexual intercourse "[w]here a person submits under the belief that the person committing the act is the victim's spouse, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce the belief."

general rule that fraud in the inducement does not vitiate consent [citation] bars prosecution for a sex offense." (*Mathews, supra*, 119 Cal.App.3d at p. 312 (conc. opn. of Paras, Acting P. J.).) The justice asserted that the "distinction between married and unmarried victims seems no longer warranted" in "[a] society which has condoned meretricious relationships." (*Ibid.*, citing *Marvin v. Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106].)

In contrast, the court in *Boro v. Superior Court* (1985) 163 Cal.App.3d 1224 [210 Cal.Rptr. 122] (*Boro*) referred to impersonation as fraud in fact. Although the case did not involve impersonation but rather a misrepresentation that the sexual intercourse was a necessary medical treatment, the court addressed impersonation in its discussion of the meaning of "unconscious of the nature of the act" as used in section 261, subdivision (a)(4). The court noted the disagreement among the courts as to whether impersonation constitutes fraud in the inducement or fraud in the fact, and stated that California has by statute "adopted the majority view" that impersonation of the victim's husband is fraud in the fact, citing subdivision (a)(5) of section 261. (*Boro, supra*, 163 Cal.App.3d at p. 1229.) The court observed that although the facts in *Mathews, supra*, 119 Cal.App.3d 309 "demonstrate classic fraud in the *factum*, a concurring opinion . . . specifically decried the lack of a California statutory prohibition against fraudulently induced consent to sexual relations in circumstances other than those specified in section 261, subdivision [(a)](5) and then-section 268." (*Boro, supra*, 163 Cal.App.3d at p. 1229.)

■ Despite its observations that impersonation was fraud in the fact, the court in *Boro* appeared to suggest that it did not constitute rape unless it was specifically addressed in the statutory definition of rape, as it was in section 261, subdivision (a)(5), in the context of impersonation of a spouse. (*Boro, supra*, 163 Cal.App.3d at p. 1229 ["Nor, as we have just seen, can we entertain the slightest doubt that the Legislature well understood how to draft a statute to encompass fraud in the *factum* (§ 261, subd. [(a)](5)) and how to specify certain fraud in the inducement as vitiating consent."].) Both *Mathews, supra*, 119 Cal.App.3d 309, and *Boro, supra*, 163 Cal.App.3d 1224, however, were decided before section 261 was amended to add a definition of "unconscious of the nature of the act." That definition expressly states that "unconscious of the nature of the act" includes circumstances in which the sexual intercourse was accomplished through fraud in the fact, i.e., when the victim "[w]as not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraud in fact." (§ 261, subd. (a)(4)(C); see *People v. Stuedemann* (2007) 156 Cal.App.4th 1, 7 [67 Cal.Rptr.3d 13] ["the concept of fraud in fact appears limited to those narrow situations in which the victim consented to the defendant's acts but, because the victim believed the essential characteristics of the act consented to were different from the characteristics of the act the defendant actually committed,

the victim was incapable of resisting the act actually committed because the victim was ignorant (or 'unconscious') of the true nature of the act permitted"].)

■ This statutory definition is reflected in the last part of the last sentence of CALCRIM No. 1003, which states that a woman is unconscious of the nature of the act if she is "not aware of the essential characteristics of the act because the perpetrator tricked, lied to, or concealed information from her." A juror easily could conclude that the identity of the sexual partner is an essential characteristic of an act of sexual intercourse—a view directly expressed in *Reg. v. Dee, supra,* 15 Cox CC 579, quoted in Rape by Fraud, *supra,* 91 A.L.R.2d at page 601, and implied in *Boro, supra,* 163 Cal.App.3d 1224—and find that someone who accomplishes an act of sexual intercourse by impersonating the victim's lover is guilty of rape of an unconscious person, regardless of the victim's marital status.

■ While that might be a reasonable interpretation of the language of subdivision (a)(4) of section 261, we are constrained by the principles of statutory construction from reaching such a conclusion. "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. . . . [W]e do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*People v. Pieters* (1991) 52 Cal.3d 894, 898–899 [276 Cal.Rptr. 918, 802 P.2d 420].) ■ "Generally, the provisions of a penal statute 'are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice.' [Citations.] Where the statute is susceptible of two reasonable constructions, however, a defendant is ordinarily entitled to that construction most favorable to him. [Citations.]" (*Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 487–488 [134 Cal.Rptr. 630, 556 P.2d 1081].) Most importantly, for the purposes of this case, "courts are 'exceedingly reluctant to attach an interpretation to a particular statute which renders other existing provisions unnecessary.' [Citation.]" (*People v. Olsen* (1984) 36 Cal.3d 638, 647 [205 Cal.Rptr. 492, 685 P.2d 52].) With these rules in mind, we turn to section 261.

When section 261 was first codified in 1872, it provided that rape was an act of sexual intercourse accomplished with a female not the wife of the perpetrator under any of six circumstances. Two of those circumstances were "[w]here she is, at the time, unconscious of the nature of the act, and this is known to the accused" and "[w]here she submits, under the belief that the person committing the act is her husband, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce such belief." (See Ann. Pen. Code, § 261 (1st ed. 1874, Haymond &

Burch, commrs.-annotators).) According to members of the California Code Commission who annotated the first edition of California's Penal Code, these provisions were included specifically in response to cases from England and elsewhere that held that no rape was committed under those circumstances. (*Id.* at pp. 113–114.) Although section 261 was amended numerous times over the past 140 years, these two provisions—now subdivision (a)(4) and (5)—remained unchanged (other than an amendment in 1979 to make the entire statute gender neutral (Stats. 1979, ch. 994, § 1, pp. 3383–3384)) until 1993, when the definition of "unconscious of the nature of the act" was added to this and several other statutes defining sex offenses. (Stats. 1993, ch. 595, § 1, p. 3120.) This definition was a late addition to a bill addressing spousal rape, and there appears to be little discussion in the legislative history regarding the intent behind this addition. Importantly, however, the bill left section 261, subdivision (a)(5) undisturbed.

■ In light of the continued existence of a separate provision that expressly makes sexual intercourse by impersonation a rape, albeit only when the victim is married and the perpetrator impersonates the victim's spouse, we are compelled to interpret section 261, subdivision (a)(4), in a way that does not render subdivision (a)(5) superfluous. Therefore, we reluctantly hold that a person who accomplishes sexual intercourse by impersonating someone other than a married victim's spouse is not guilty of the crime of rape of an unconscious person under section 261, subdivision (a)(4). The prosecutor argued this precise theory to the jury, and CALCRIM No. 1003 as read to the jury in this case allowed the jury to convict defendant under the theory that he impersonated Jane's boyfriend.

■ Further, the record here fails to disclose whether the jury relied on this theory, or on the correct theory argued by the prosecutor, i.e., that Jane was unconscious because she was asleep. "When one of the theories presented to a jury is legally inadequate, such as a theory which ' "fails to come within the statutory definition of the crime" ' [citation], the jury cannot reasonably be expected to divine its legal inadequacy. The jury may render a verdict on the basis of the legally invalid theory without realizing that, as a matter of law, its factual findings are insufficient to constitute the charged crime. In such circumstances, reversal generally is required unless 'it is possible to determine from other portions of the verdict that the jury necessarily found the defendant guilty on a proper theory.' " (*People v. Perez* (2005) 35 Cal.4th 1219, 1233 [29 Cal.Rptr.3d 423, 113 P.3d 100].) Because we can make no such determination on the record before us, we must reverse the conviction.

On retrial, given the unusual facts of this case, we direct the trial court to delete that portion of CALCRIM No. 1003 which defines unconsciousness to

include the situation in which the woman is "not aware of the essential characteristics of the act because the perpetrator tricked, lied to, or concealed information from her." On the evidence presented, and under the current state of the law, that provision of the instruction does not apply.

### B. *Mistake of Fact Regarding Consent*

Although we hold that the judgment must be reversed based upon language in CALCRIM No. 1003 that would allow the jury to find defendant guilty under an invalid legal theory, we nevertheless must address defendant's second ground for reversal on appeal because the issue is likely to arise on retrial. Defendant argues that, in light of his testimony that Jane appeared to respond favorably to his kisses and touching, the trial court erred by failing to give instructions that would have allowed the jury to consider his good faith, but mistaken, belief that Jane had consented to sexual intercourse with him. We disagree.

 Defendant was charged with rape of an unconscious woman. To prove that crime, the prosecution must prove that "(1) the defendant had sexual intercourse with the victim; (2) the defendant was not married to the victim at the time; (3) the victim was unable to resist because she was unconscious of the nature of the act; and (4) the defendant knew the victim was unable to resist because she was unconscious of the nature of the act." (*People v. Hernandez* (2011) 200 Cal.App.4th 1000, 1006 [133 Cal.Rptr.3d 229].) The defendant's belief as to the victim's consent is not relevant; it is the defendant's knowledge that the victim was unconscious and his intent to engage in an act of sexual intercourse with an unconscious person that makes that act a crime under section 261, subdivision (a)(4). (See *People v. Dancy* (2002) 102 Cal.App.4th 21, 36–37 [124 Cal.Rptr.2d 898].)

Evidence of defendant's observations of the victim's conduct and his belief that the conduct showed that she consented to his acts—such as defendant's testimony in the present case that Jane responded to his kisses and touching—goes to the defendant's knowledge that the victim was unconscious when he had sexual intercourse with her. Here, the jury was instructed that, to find defendant guilty, the prosecution must prove that "[t]he defendant knew that the woman was unable to resist because she was unconscious of the nature of the act." If the jury believed that defendant thought Jane was awake and conscious that she was engaging in sexual intercourse, it could not find defendant guilty of rape of an unconscious person. No other instruction was necessary.

## DISPOSITION

The judgment is reversed and the matter remanded for a retrial, with directions to the trial court, when instructing the jury, to omit from CALCRIM No. 1003 the phrase: "or not aware of the essential characteristics of the act because the perpetrator tricked, lied to, or concealed information from her."

Epstein, P. J., and Manella, J., concurred.

A petition for a rehearing was denied January 23, 2013.