Filed 6/24/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048155 |
| v. | (Super. Ct. No. 11WF0857) |
| LEE HOANG ROBINSON, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James A. Stotler, Judge. Affirmed as modified and remanded for resentencing.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Laura A. Glennon Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Lee Hoang Robinson lured women into his beauty salon after hours by promising to give them free facial treatments.  After providing them with minimal facial services, he switched gears and went into massage mode.  He not only massaged their arms and legs, he rubbed their breasts and vaginal area, as well.  For purposes of this appeal, appellant admits he touched the women for sexual purposes.  However, he contends the women were not rendered unaware of his lewd intent by virtue of his fraudulent representations, and therefore his convictions for sexual battery by fraud must be reversed.  The Attorney General concedes the evidence is lacking with respect to two of the victims, and we find the concession justified since those women clearly knew appellant's actions were sexually motivated.  We also agree with the Attorney General that, as to those particular victims, the appropriate remedy is to reduce appellant's convictions to the lesser included offense of misdemeanor sexual battery, which necessitates a remand for resentencing.  In all other respects, we affirm the judgment.

FACTS

Appellant worked at the Queen Beauty Salon in Garden Grove.  One day in December 2009, he went to a drug store near the salon and struck up a conversation with 17-year-old Dianna N., who was working there as a cashier.  Appellant told Dianna he would give her a free facial if she came by his salon that night.  He said he would keep the salon open late for her, and students from a nearby beauty college would be there to observe his work.  He also told Dianna that if she brought along a friend, he would give her a free facial, too.

When Dianna got off work that day, she went home and told her 18-year-old sister Christine about her conversation with appellant.  After talking it over with their mother, they decided to take appellant up on his offer.  When they arrived at appellant's salon that evening, appellant greeted them in the waiting area.  He then took them into a back room, while their mother stayed in the waiting area and watched a movie.  No one else was at the salon that night.

2

Appellant gave Dianna and Christine each a robe and left them alone to change. They both took off their tops and bras but left their pants on under their robes. When appellant returned, he had them lay down on separate massage tables that were in the room. He then put a cloth over their eyes, washed their faces and applied a facial cream that cakes up and hardens as it dries.

After leaving the room briefly for a second time, appellant returned and told Dianna and Christine he was going to give them a "European massage." Appellant didn't explain what that meant, and the sisters didn't know either. Appellant started out by massaging Dianna's arms. Then he opened the top of her robe and started massaging the outer part of her breasts. After that, he told Dianna he was going to unbutton her pants so he could massage her thighs. Dianna didn't object. Trusting appellant, she did not think he was going to take the massage any further than that.

But he did. After unbuttoning Diana's pants and lowering them several inches, appellant massaged her thighs briefly. Then he worked his way up to her groin, slipped his hand underneath her underwear and started rubbing her vaginal area. At that point, Dianna got scared and started to question appellant's motives. However, she still didn't say anything because she didn't know if that sort of intimate touching was part of what a European massage entailed. Appellant rubbed her vaginal area for a minute or two longer, and then he turned his attention to Christine.

Like Dianna, Christine wasn't sure what a European massage entailed. As she lay there silently, appellant opened her robe and began massaging her arms, stomach and breasts. Before long, he was down by Christine's waistline, trying to unbutton her pants. Christine put her hand on the button, but appellant told her, "This is a European massage. I do this all the time for other girls. You know, this is just part of it all . . . don't worry."

3

With that, Christine let appellant proceed. He unbuttoned her pants and lowered them to her mid-thigh. Then he folded back her underwear and began massaging her thighs and around her vaginal area. He told her he would be glad to give her a bikini wax if she wanted to come back another time, but Christine was too nervous to say anything at that point. However, when appellant tried to put his finger in her vagina, she pushed his hand away and pulled up her underwear because she knew "that wasn't right." While she expected a European massage to be fairly exotic, perhaps involving some intimate touching, she knew digital penetration wasn't a "normal" part of any massage.

In light of Christine's resistance, appellant went back to massaging her arms, stomach and breasts. Then, after a few more minutes, he left her and Dianna alone to get dressed. While they were in the room, they talked briefly about what had happened. However, they didn't tell their mother or go to the police until several months later, in August 2010.

In March of that year, appellant approached 37-year-old Trang T. inside a Target store and told her he owned a beauty salon. He said he needed someone to demonstrate a facial and massage for some students that evening, and he would pay her $40 to be his model. Trang agreed to meet appellant at his salon later that night.

When she arrived there, there was a person getting a haircut, but no one else was around. Appellant led her into a back room and gave her a robe to change into. Then he left the room and returned a few minutes later. He had Trang lie down on a massage table and put a cloth over her eyes. When she asked about the students, appellant said they hadn't arrived yet, and he was going to start without them. Trang could hear talking out in the lobby for a little while longer, but then she heard the front door close and the room fell silent, so she assumed she and appellant were alone.

Appellant didn't spend much time on Trang's face. After rubbing a little lotion on her checks, he oiled up his hands and began messaging her arms, legs and feet.

4

Although Trang told appellant she didn't like him touching her body, he opened up the front of her robe, exposing her breasts. Trang put her hands over her breasts and asked appellant what he was doing. He told her it was standard procedure and to just relax, but Trang felt scared. She didn't think any students would be showing up, and she didn't know precisely what to do.

Despite her obvious discomfort, appellant poured oil on her chest and started rubbing her breasts. He talked about how all his clients loved this and acted like it was perfectly normal. Trang wasn't buying it. When appellant tried to slip his hands beneath her underwear, she told him to stop, and he did. But then he turned her over and started massaging her back and butt. Trang didn't say anything because she didn't want to anger appellant. As he was rubbing her backside, he reached between her legs and touched her clitoris. He also penetrated her vagina with his finger. Hoping to extricate herself from the situation, Trang told appellant she had to go because she was late for a class. However, rather than letting her leave, he began wiping her down with a towel.

Appellant asked Trang to spread her legs so he could wipe her vaginal area, and even though she said no, "he just wiped it and moved on." As he was wiping her backside, he put his fingers between her legs and touched the inside of her vagina. When Trang told him she didn't like that, he said no one had ever complained about him doing that to them before. He then reached down and digitally penetrated her vagina again. At that point, Trang sat up, grabbed her clothes and told appellant she was leaving. After getting dressed, she ran out of the salon and went to the police. Having never experienced anything like that during any of the massages she had received in the past, she felt appellant's conduct was utterly wrong.

The police interviewed appellant about the incident, but he denied any wrongdoing. Asked about his work practices, he claimed he only gave his clients facials, not body massages. He also told the police he had surveillance cameras set up at his

5

salon. However, when the police asked to see the tapes, he told them the cameras had not been working for some time.

Four months after his police interview, in July 2010, appellant talked 24-year-old Odette M. into coming to his salon at nine o'clock one evening. Having promised Odette a free facial, appellant took her to a back room of his salon and had her change into a robe. After putting some cream on her face, he began rubbing oil on her arms and legs. Then he lifted up her robe and started rubbing oil on her stomach. Odette, who was wearing only underwear underneath her robe, balked immediately. Appellant hadn't said anything about a massage, and she told him not to go there.

Appellant told her to relax, and slipping his hands underneath her underwear, began rubbing her vaginal area. This made Odette shudder, but when she objected to appellant, he assured her he did this to all his clients and continued with the rubbing. It took several more demands by Odette before he finally relented and put her robe back in place. But then he started massaging her shoulders and lowered her robe in the front. Odette tried to cover herself back up, but appellant grabbed her breasts and started squeezing them. Again, Odette protested and again appellant was slow to respond, although he eventually relented and put her robe back in place.

After that, appellant started toweling the oil off Odette's body. She said she didn't want him touching her anymore, but he wiped the towel all over her body, including her vaginal area and breasts. He then told her to leave the cream on her face for 10 more minutes and left the room. During that time, Odette stayed put out of fear. When appellant returned, he wiped her face clean. He also asked for her phone number and said he was going to call her the next day about a possible modeling gig. Then he departed again, and Odette got dressed. Upon leaving the salon, she angrily confronted appellant in the parking lot. She went to the police about a week later and has also filed a civil suit against appellant.

6

As to each of the four victims, appellant was charged with two counts of sexual battery by fraud for touching their breasts and vaginal area. He was also charged with one count of sexual penetration with a foreign object for digitally penetrating Trang. The jury convicted appellant as charged, and the trial court sentenced him to 12 years in prison.

DISCUSSION

Appellant argues there is insufficient evidence to support his convictions for sexual battery by fraud. In his mind, there is just no way any of the alleged victims could have reasonably believed his sexual misconduct was related to the services he promised them. As to two of the victims – Trang and Odette – the Attorney General agrees, as do we. However, we find ample evidence to support appellant's convictions as to Dianna and Christine. We also believe that, rather than reversing and dismissing the challenged convictions as to Trang and Odette, as appellant requests, the appropriate remedy is to reduce those convictions to the lesser included offense of misdemeanor sexual battery.

As its name implies, the crime of sexual battery by fraud is a specific type of sex crime. The crime occurs when a person "touches an intimate part of another person for the purpose of sexual arousal, sexual gratification, or sexual abuse, and the victim is at the time unconscious of the nature of the act because the perpetrator fraudulently represented that the touching served a professional purpose[.]" (Pen. Code, § 243.4, subd. (c).)

The crime is designed to deter fraud in the inducement, where the victim acquiesces to a sexual act under the guise it is part of a professional service. (*People v. Pham* (2009) 180 Cal.App.4th 919, 926 (*Pham*).) Although the statute uses the term "unconscious," the victim need not be "totally and physically unconscious during the acts in question." (*Id*. at p. 928.) Rather, the evidence need only show the victim was tricked "into submitting to the touching on the pretext it served a professional purpose." (*Ibid*.)

7

In *Pham*, the defendant was a chiropractor who treated his victims for various injuries. Some of the treatment he provided was legitimate. But during a few of the sessions, he massaged the victims' breasts and touched their vaginal area under the guise of treating them. (*Pham, supra*, 180 Cal.App.4th at pp. 922-924.) Although the victims were concerned about some of the touching when it was taking place, we held there was sufficient evidence to support a finding they were unconscious of its sexual nature due to the defendant's representations that it served a professional purpose. In so holding, we noted, "'There is an inherent trust and confidence which a patient seeking medical care places in the [professonial] and upon which a patient relies in allowing the [professional] access to the most intimate parts of the body.' [Citation.]" (*Id*. at p. 926.)

Appellant argues that because he was only a beautician, none of his alleged victims had "any reason to have the sort of professional trust in [him] that one would have in a medical professional as in *Pham*." We recognize certain professions are more trusted than others. However, to be guilty of sexual battery by fraud, the perpetrator is not required to have a professional occupation, nor must he be certified in his field or even receive remuneration for his services. (*People v. Bautista* (2008) 163 Cal.App.4th 762, 773-778.) The crime is not limited to the medical context but instead "encompasses actions taken in the course of one's vocation or based on one's specialized knowledge or training in a given field." (*Id*. at p. 775.) Indeed, "[t]he precise nature of the perpetrator's employment is less important . . . than the appearance of authority and of a legitimate purpose that allows the perpetrator to [sexually exploit] the victim without the victim's understanding of the true nature of the act." (*Ibid*.)

In this case, appellant represented to all of his victims that his services were for a professional purpose, namely a facial and/or massage, usually as part of an educational endeavor. Whenever they balked at his actions, he reassured them his conduct, including the intimate touching, was a standard practice that was universally

8

enjoyed by all of his clients. Those representations created the impression his lewd conduct was part and parcel of the services he was providing. Even though he was not a medical professional, the jury could reasonably conclude he had a purported "professional purpose" for his actions.

This is so despite the fact no students ever showed up to watch appellant work. Student spectators are not part of a standard facial, and notwithstanding their absence in this case, there was still ample evidence from which the victims could have reasonably believed appellant's actions were intended to serve a professional purpose. After all, he told them he worked at a beauty salon, he had them meet him at the salon and he started out all of their sessions by applying lotion to their faces. When challenged about the absence of students, he insisted they were on their way. Because the sessions had the trappings of a professional beauty service, and because appellant acted like and expressly represented his actions were part of such service, the professional purpose requirement was adequately proven in this case. (See *People v. Bautista, supra*, 163 Cal.App.4th at pp. 778-781 [14-year-old victim could reasonably believe lay pastor's actions in touching her vagina served a professional purpose since he was the leader of her church and told her he was only checking to see if she was still a virgin].)

It is also clear from the record that Dianna and Christine relied on appellant's representations. Working on the assumption the only inducement he made was the promise of a facial, appellant argues none of his victims could have actually believed his lewd conduct was related to his performance of that lone service. But appellant didn't just promise Dianna and Christine a facial. After he slathered their faces with various lotions and creams, he announced he was going to give them a "European massage" as well. That gave him an excuse to transition his attention from their faces to other parts of their bodies.

9

Unsure of what a European message entailed, Dianna and Christine trusted appellant when he told them it involved touching their breasts and thighs. And although they both became concerned when appellant started rubbing their vaginal areas, they still didn't say anything. Appellant asserts this is because they were frightened and embarrassed, not because they believed his acts were somehow related to his purported services. But Dianna and Christine testified they didn't know what was going on when appellant was rubbing around their vaginas. In their teens, unfamiliar with European massage practices, and together in the same room, they simply weren't sure whether appellant was giving them a proper massage or touching them with lewd intent. Only when appellant attempted to insert his finger into Christine's vagina did she fully realize he was out of line. Even so, neither she nor Dianna went to the police until several months after the incident occurred.

As we explained in *Pham*, a victim's uncertainty as to whether the services in question were legitimate does not compel reversal in a case involving fraudulent inducement. In fact, we upheld the defendant's convictions in *Pham* despite evidence the victims were uncomfortable with the defendant's touching and uncertain of his intentions at the time he carried them out. (*Pham, supra*, 180 Cal.App.4th at p. 930.) For the reasons explained above, it was reasonable for the jury to conclude Dianna and Christine were lured into submitting to appellant's lewd conduct on the pretext it served a professional purpose. Although they had some concerns when appellant was touching their breasts and vaginal areas, the totality of the circumstances supports the jury's finding in this regard.[1]

Trang and Odette are a different story, as the Attorney General rightly concedes. Unlike Dianna and Christine, they were alone with appellant, and the moment

---

[1] In arguing to the contrary, appellant draws our attention to *People v. Morales* (2013) 212 Cal.App.4th 583, claiming it has "great relevance" to his appeal. However, that case involved the rape of an unconscious person and turned on the marital status of the victim. We fail to see, and appellant has not explained, how that case has any bearing on the issues before us.

10

he moved his attention away from their faces and started touching other parts of their bodies, they made it clear to him they were uncomfortable and wanted him to stop. Even though appellant tried to convince them his actions served a professional purpose, they did not believe him and repeatedly objected to his lewd conduct. In fact, the record shows the only reason they put up with appellant's actions for as long as they did is because they did not want to anger him and make things worse for themselves. Under these circumstances, we agree with the parties that there is insufficient evidence to support the jury's findings Trang and Odette were unconscious of the sexual nature of appellant's actions. Thus, appellant's convictions for committing sexual battery by fraud against them in counts one, two, four and five must be reversed.

The only remaining issue is whether those counts should be dismissed altogether or simply be reduced to reflect convictions for the lesser offense of misdemeanor sexual battery. While we have the authority to reduce a conviction to a lesser offense where the evidence supports the lesser but not the charged offense, we can only do so when the lesser offense is necessarily included in the charged offense. (Pen. Code, § 1181, subd. 6; *People v. Martinez* (1999) 20 Cal.4th 225, 241; *People v. Stuedemann* (2007) 156 Cal.App.4th 1, 9, fn. 6.) "'To constitute a lesser and necessarily included offense it must be of such a nature that as a matter of law and considered in the abstract the greater crime cannot be committed without necessarily committing the other offense. [Citations.]'" (*People v. Steele* (2000) 83 Cal.App.4th 212, 218, italics omitted.)

The crime of misdemeanor sexual battery occurs when a person "touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse[.]" (Pen. Code, § 243.4, subd. (e)(1).) In comparing that offense with the crime of sexual battery by fraud, it is clear both offenses "have two identical elements: (1) the defendant touches an intimate part of the victim and (2) the defendant acts for the specific purpose

11

of sexual arousal or gratification. The difference between the two crimes is that [misdemeanor] sexual battery requires a touching 'against the will' of the victim, whereas sexual battery by fraudulent representation requires the victim to be 'unconscious' of the nature of the touching because the defendant fraudulently represents that the touching serves a professional purpose." (*People v. Babaali* (2009) 171 Cal.App.4th 982, 995 (*Babaali*).) There is a split of authority over whether "this difference means that [misdemeanor] sexual battery is not a lesser included offense of sexual battery by fraudulent representation." (*Ibid*.)

In *Babaali*, the court analyzed this issue by looking at CALCRIM No. 938, the pattern instruction on misdemeanor sexual battery, which defines "'against a person's will'" as meaning the "'person does not consent to the act.'" (*Babaali, supra*, 171 Cal.App.4th at p. 996.) The majority contrasted this lack-of-consent requirement with the situation presented in cases of sexual battery by fraud, where "the defendant gains the victim's acquiescence to the intimate touching by fraudulently representing it has a professional purpose." (*Id*. at p. 997.) The majority simply did not believe that "making a fraudulent representation that results in the victim's submitting to a specific intimate touching" was the same as acting without the person's consent. (*Id*. at p. 998.) Therefore, it ruled misdemeanor sexual battery was not a lesser and necessarily included offense of sexual battery by fraud. (*Ibid*.)

However, as the dissenting Justice in *Babaali* correctly pointed out, the definition of "against a person's will" in CALCRIM No. 938 actually encompasses the unconsciousness element of sexual battery by fraud. Indeed, that instruction provides, "'In order to *consent*, a person must act freely and voluntarily and *know the nature of the act*.'" (*Babaali, supra*, 171 Cal.App.4th at p. 1001, quoting CALCRIM No. 938 (dis. opn. of Manella, J.).) Based on this definition, the dissent reasoned that "[i]f a victim does not know the nature of the act, she cannot consent, and under such circumstances, an

12

intimate touching for the purpose of sexual gratification is necessarily at least a sexual battery." (*Id*. at p. 1002.)

We agree with this reasoning, which was also adopted in *People v. Smith* (2010) 191 Cal.App.4th 199. As the *Smith* court noted, "a victim who is unconscious that she is being subjected to a *sexual* touching . . . because 'the perpetrator fraudulently represented that the touching served a professional purpose,' has not consented to that sexual touching, and that touching is against the will of the victim just as much as if the victim were incapable of consenting or if the perpetrator were to accomplish the touching by force." (*Id*. at p. 209.)

In arguing otherwise, appellant reminds us that courts have traditionally been reluctant to criminalize fraud in the inducement because the victim of such fraud ostensibly consents to the act in question, albeit under false pretenses. (See *Pham, supra*, 180 Cal.App.4th at p. 925.) However, that's precisely why the Legislature created Penal Code section 243.4, subdivision (c). That provision exemplifies the modern approach of treating fraud in the inducement as a form of coercion that vitiates the victim's alleged consent and renders the perpetrator criminally liable for the acts in question. (*Id*. at pp. 925-926; cf. *People v. Giardino* (2000) 82 Cal.App.4th 454, 460 [in the context of rape, valid consent does not exist when the victim is unaware of the nature of the act].) Under this approach, a sexual act perpetrated by fraud is always deemed to be against the victim's will, and therefore a misdemeanor sexual battery will always occur when the crime of sexual battery by fraud takes place. That being the case, it follows that misdemeanor sexual battery is a necessarily included offense of sexual battery by fraud.

Because the evidence shows appellant committed misdemeanor sexual battery, but not sexual battery by fraud, against Trang and Odette, we may lawfully reduce his convictions to the lesser offense on the counts involving those two victims. But because the trial court structured appellant's sentence based on those particular counts, the matter must be remanded for resentencing.

DISPOSITION

The judgment is modified to reduce appellant's convictions on counts one, two, four and five from sexual battery by fraud (Pen. Code, § 243.4, subd. (c)) to misdemeanor sexual battery (Pen. Code, § 243.4, subd. (e)(1)), and the matter is remanded for resentencing.  In all other respects, the judgment is affirmed.


BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.